IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 17, 2005

## STATE OF TENNESSEE v. ANGIE DELENE JACKSON

**Direct Appeal from the Criminal Court for Greene County**
**No. 03-CR-063     James Edward Beckner, Judge**

_____

**No. E2004-01755-CCA-R3-CD - Filed October 14, 2005**

_____

Following a jury trial, Defendant, Angie Delene Jackson, was convicted of driving a commercial vehicle under the influence of alcohol with a blood alcohol concentration of 0.04 or greater, a Class A misdemeanor, and for violation of the motor carrier safety rules and regulations, a Class B misdemeanor.  The trial court sentenced Defendant to concurrent sentences of eleven months, twenty-nine days for each conviction.  On appeal, Defendant argues (1) that the trial court erred in denying her motion to suppress the results of her blood alcohol test; (2) that the trial court erred in denying her motion to suppress the evidence discovered during a search of her vehicle; and (3) that the trial court erred in ordering Defendant to serve five percent of her effective sentence in confinement.  We find that the trial court erred in denying Defendant's motion to suppress the evidence discovered during a search of her vehicle.  We find the trial court's error harmless as to Defendant's DUI conviction, and affirm that conviction.  Because we find the evidence insufficient, however, to support Defendant's conviction for violation of the motor carrier safety rules and regulations, we reverse it and dismiss that charge.  We further reverse Defendant's sentence for her DUI conviction and remand for a new sentencing hearing.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court
### Affirmed in Part; Reversed in Part and Dismissed; Reversed in Part
### and Remanded for a New Sentencing Hearing

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Mitzi L. Sweet, Morristown, Tennessee (on appeal); and Leroy Tipton, Jr., Greeneville, Tennessee (at trial), for the appellant, Angie Delene Jackson.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Cecil Clayton Mills, Jr., Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Deputy Jason Taylor with the Greene County Sheriff's Department was dispatched to the Davy Crockett Truck Stop on December 20, 2002 to investigate an accident. A tractor-trailer had been backed into another trailer that was parked at a garage on the truck stop's premises. Defendant told Deputy Taylor that she was the driver of the truck that caused the accident. Deputy Taylor said that Defendant's eyes were bloodshot, and he detected the smell of alcohol about her person. He said that Defendant consented to a search of her truck's cab. Deputy Taylor found a half empty bottle of beer behind the passenger seat in the cab, and an unopened bottle of beer in a refrigerator in the truck. Deputy Taylor then arrested Defendant for DUI and transported her to the Greene County Detention Center. Deputy Taylor read Defendant her rights under the implied consent law, and Defendant signed the consent form, agreeing to take a blood alcohol test. A nurse at the detention center drew two samples of blood from Defendant. One of the vials was placed in a box and sealed; the other vial was given to Defendant. Deputy Taylor placed the sealed box in the "evidence bin" at the detention center.

On cross-examination, Deputy Taylor said that he arrived at the truck stop around 1:30 p.m. He could not recall if Defendant was crying. Deputy Taylor said that he did not take any notes of the incident, and his videotape equipment was inoperable. Deputy Taylor could not recall if the refrigerator inside the truck was turned on or off or whether the beer bottles he found were cold or hot. He said that the evidence bin at the detention center was accessible to other employees.

Brett Trotter, a forensic scientist with the T.B.I, tested Defendant's blood sample on February 7, 2003 with a head space gas chromatography. Mr. Trotter said that, in accordance with the laboratory's procedure, he ran a series of calibrations prior to testing to verify the equipment's proper operation. He then ran a series of control standards. Mr. Trotter said that his test showed that Defendant's blood sample had a concentration of 0.20 percent ethanol.

On cross-examination, Mr. Trotter said that he is assigned to the T.B.I. laboratory in Chattanooga. Defendant's blood sample was one of 436 samples that were transported from Knoxville to Chattanooga for testing because of a backlog in the Knoxville laboratory. Mr. Trotter said that he received the samples on January 8, 2003, and stored them in a locked refrigerator. Mr. Trotter said that he did not run a second test of Defendant's blood sample to confirm his initial results.

Virginia Gluck testified for the defense. Ms. Gluck said that she is a medical laboratory technologist with Takoma Adventist Hospital. Ms. Gluck said that Defendant called and asked her to perform a blood alcohol test on the blood sample that was given to Defendant at the detention center. Ms. Gluck said that Defendant's sample was in an unsealed vial, and the hospital usually did not perform tests on unsealed samples. Ms. Gluck said that hospital procedures required tape to be

placed over the top and around the vial when a legal blood alcohol sample was taken. Nonetheless, Ms. Gluck tested Defendant's sample which showed a concentration of 0.051 percent ethanol.

Defendant testified that she had been a truck driver since 1978. She said that at the time of the accident, her tractor-trailer was parked at the truck stop for the duration of her Christmas vacation. Defendant said she cleaned the truck's cab on December 9, 2002, and put two beers in the truck. She drank one-half of one of the beers as she cleaned. Defendant said she returned to the truck stop on December 10 and bought a soda. When she checked on her truck, she noticed one of the tires needed air. She backed the truck toward Looney's garage until she felt a bump. Defendant said she started crying because she was upset about the collision.

Defendant said that she agreed to take the blood alcohol test. She also volunteered to take a Breathalyzer test but the machine at the Greeneville County Detention Center was broken. Defendant said the nurse drew two samples of blood, and Defendant took one of the vials with her. She said that no one told her to refrigerate the sample until it was tested.

Sherry Sowers, the director of nursing at the Greeneville Detention Center, was called as a rebuttal witness. She said that she cleaned Defendant's arm with betadine instead of alcohol because betadine would not interfere with the test results. On cross-examination, Ms. Sowers said that she did not seal the vial itself. The vial was instead sealed inside a plastic bag according to T.B.I. procedures.

## II. Motions to Suppress

At two separate suppression hearings, Defendant argued that the trial court erred in not suppressing the results of her blood alcohol test and the bottles of beer found in her tractor-trailer.

### A. Standard of Review

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). However, this Court is not bound by the trial court's conclusions of law. *State v. Simpson*, 968 S.W.2d 776, 779 (Tenn. 1998). The application of the law to the facts found by the trial court are questions of law that this court reviews *de novo*. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. *Braziel v. State*, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

B. Blood Alcohol Test Results

Defendant argues that the trial court erred by admitting the results of Defendant's blood alcohol test because the State failed to establish a proper chain of custody for her blood sample. At the hearing on Defendant's motion to suppress the test results, Ms. Sowers testified that she drew two vials of blood from Defendant with Deputy Taylor present, and recorded Defendant's name and birth date on each vial's label. Ms. Sowers gave one vial to Deputy Taylor, and she retained the second vial in a refrigerator until Defendant's release from jail. Ms. Sowers said that the detention center uses a prepackaged kit provided by the T.B.I. for drawing blood. The kit included the vials, an alcohol/toxicology request form and the box in which the vial is sealed.

Deputy Taylor placed the vial designated for transmission to the T.B.I. in a box, sealed the box, and initialed the outside of the box. He placed the sealed box in a receptacle for evidence designated for testing at the T.B.I. laboratory in Knoxville.

Angie Weems testified that she is an evidence technician for the Greene County Sheriff's Department. Ms. Weems said that she logs in evidence received at the detention center, and either mails the evidence by certified mail to the T.B.I. laboratory in Knoxville or hand delivers the package. Although Ms. Weems could not specifically recollect logging in Defendant's blood sample, she identified the alcohol/toxicology request form which showed that she hand-delivered Defendant's blood sample to the T.B.I. Knoxville Crime Lab on December 23, 2002. Ms. Weems said that it was normal business procedure for her to verify that the evidence box was sealed when she gave the evidence box to the T.B.I.

Melanie Phillips, a forensic technician at the T.B.I. Knoxville Crime Lab, testified that it was her job to verify that the evidence boxes received at the lab were properly sealed. She stated that the alcohol/toxicology request form showed that she received Defendant's blood sample from Ms. Weems on December 23, 2002. Ms. Phillips signed the alcohol/toxicology request form as the recipient of the evidence, and placed the box in a secured vault in a refrigerator until the box was opened by Maleena Jenkins, another forensic technician. Ms. Phillips said that blood samples sent to the laboratory are opened at a designated time during the week by Ms. Jenkins. Ms. Jenkins initialed the alcohol/toxicology request form when she opened the box.

Brett Trotter, a forensic scientist with the T.B.I. Chattanooga Crime Lab, received Defendant's blood sample on January 8, 2003 from Melanie Carlyle, a forensic scientist employed in the Knoxville lab. Mr. Trotter said that more than 400 blood samples were sent to Chattanooga because of a backlog in Knoxville. Mr. Trotter said that he verified the laboratory number recorded on the vial with the number shown on the request form, but he did not make an independent determination that the vial was still vacuum-sealed before he tested the sample.

Based on this evidence, the trial court found that there was not a reasonable chance of adulteration or misidentification of Defendant's blood sample, and that the State had satisfactorily established a proper chain of custody.

Before tangible evidence can be admitted into evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody. *State v. Kilpatrick*, 52 S.W.3d 81, 87 (Tenn. Crim. App. 2000). While every possibility of tampering does not have to be excluded, the circumstances must establish a reasonable assurance of the identity and integrity of the evidence. *State v. Scott*, 33 S.W.3d 746, 760 (Tenn. 2000). The chain of custody requirement is "'to demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence.'" *Id.* (quoting *State v. Braden*, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)).

It is in the sound discretion of the trial court to determine whether the chain of custody requirement has been satisfied, and the trial court's determination will not be overturned in the absence of clearly mistaken exercise of that discretion. *Kilpatrick*, 52 S.W.3d at 87; *State v. Holbrooks*, 983 S.W.2d 697, 701 (Tenn. Crim. App. 1998).

In this instance, Deputy Taylor was present when Ms. Sowers drew blood from Defendant's arm. Afterward, he labeled and packaged the sample pursuant to a standard procedure. The sample was placed into a box and sealed. Ms. Weems hand-delivered the sealed box with Defendant's blood sample to the T.B.I. Knoxville Crime Lab. Ms. Phillips received the box, verified it was properly sealed, and placed the box in a refrigerated, secure vault. Although Ms. Jenkins and Ms. Carlyle did not testify, their role in the chain was established by Ms. Phillips and Mr. Trotter's testimony and documented by standard T.B.I. records. *See State v. Terry Scott*, No. E2003-00360-CCA-R3-CD, 2003 WL 22326980 (Tenn. Crim. App., Knoxville, Oct. 9, 2003), *no perm. to appeal filed*; *State v. Bobby Wells, Jr.,* No. E2000-01496-CCA-R3-CD, 2003 WL 22326980 (Tenn. Crim. App., Knoxville, June 28, 2001)*, perm. to appeal denied* (Tenn. Oct. 1, 2001). Mr. Trotter received Defendant's blood sample and verified that the information on the vial matched the information in the accompanying paperwork.

Based on our review, the State properly established a basis for admission of Defendant's blood alcohol test results. Defendant is not entitled to relief on this issue.

### C. Search of Vehicle

Defendant also filed a motion to suppress the beer bottles found during a warrantless search of the cab of her truck. At this suppression hearing, Officer Taylor testified that he investigated the accident at the Baileyton truck stop. He determined that Defendant was the driver of the tractor-trailer which had backed into another trailer. Officer Taylor said that Defendant had bloodshot eyes, slurred speech, and he detected the smell of alcohol on her person. Officer Taylor asked Defendant if she had drugs or alcohol in her truck, and she responded negatively. Officer Taylor testified that Defendant consented to a search of her truck. During the search, Officer Taylor found a half-empty beer bottle behind the passenger seat and an unopened beer bottle in the refrigerator.

On cross-examination, Officer Taylor said that Defendant did not execute a written consent form. He asked Defendant to go into the truck first so that she could end the search if she wanted.

Officer Taylor said that he arrested Defendant for driving under the influence after the search was completed.

Defendant testified that she did not give her consent to the search. Defendant said that Officer Taylor remained at the back of her truck while she retrieved her driver's license, registration, and insurance card from the cab. Defendant said that she was putting her documents away when Officer Taylor suddenly appeared at the driver's side door. He asked her for consent to search the truck, and she refused. Defendant said that Officer Taylor entered the truck's cab anyway. Defendant denied that Officer Taylor asked her if she had been drinking before he conducted the search. Defendant said her eyes were red because she was upset by the accident and had cried.

On cross-examination, Defendant said that the truck was operable, and that she could have driven the truck off the parking lot.

The trial court found it unnecessary to resolve the conflicting testimony over consent. The trial court found that Officer Taylor had probable cause to believe that Defendant was driving under the influence of alcohol and that her vehicle contained contraband. The trial court found that exigent circumstances existed because of the mobility of the vehicle which justified a warrantless search under the "automobile exception."

"A warrantless search is presumed unreasonable under both the federal and the state constitutions, and evidence seized from the warrantless search is subject to suppression unless the State demonstrates by a preponderance of the evidence that the search was 'conducted pursuant to one of the narrowly defined exceptions to the warrant requirement.'" *State v. Chearis*, 995 S.W.2d 641, 643 (Tenn. Crim. App. 1999) (citations omitted). Two such exceptions to the warrant requirement include a search incident to arrest and a search conducted pursuant to consent. *See New York v. Belton*, 453 U.S. 454, 460, 101 S. Ct. 2860, 2864, 69 L. Ed. 2d 768 (1981); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 98 S. Ct. 2041, 2043, 36 L. Ed. 2d 854 (1973).

Neither party contended that Defendant was arrested at the time Officer Taylor conducted the search of her cab. While there was evidence presented at the suppression hearing that Defendant consented to the search, the trial court made no findings as to this issue. Instead, the trial court denied Defendant's motion under a third exception to the warrant requirement, namely, the "automobile exception."

The "automobile exception" allows police officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains contraband. *Carroll v. United States*, 267 U.S. 132, 149, 45 S. Ct. 280, 283-84, 69 L. Ed. 2d 543 (1925); *State v. Leveye*, 796 S.W.2d 948 (Tenn. 1990). The rationale for the exception rests upon (1) the impracticability of obtaining a search warrant in light of the inherent mobility of an automobile; and (2) the reduced expectation of privacy with respect to one's automobile. *California v. Carney*, 471 U.S. 386, 390-93, 105 S. Ct. 2066, 2069-70, 85 L. Ed. 2d 406 (1985); *South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S. Ct. 3092, 3096, 49 L. Ed. 2d 1000 (1976). "Probable cause has been defined as a reasonable ground for

suspicion, supported by circumstances indicative of an illegal act." *State v. Hemming*, 975 S.W.2d 290, 294 (Tenn. 1998). Thus, in order to show that Officer Taylor had probable cause to search Defendant's tractor-trailer for contraband under the automobile exception, the State must show by a preponderance of the evidence that it is a crime for Defendant to possess alcohol in her vehicle.

Defendant was indicted in count two of "commit[ting] the offense of Violation of the Motor Carrier Safety Rules and Regulations by operating a vehicle over or upon the public highways of this state and violating or failing to comply with the safety rules and regulations applicable thereto by knowingly possessing an intoxicating beverage in a commercial vehicle; a Class B misdemeanor, in violation of T.C.A. §[§] 65-15-113, 122. . . ."

Tennessee Code Annotated section 65-15-113 authorizes the Tennessee Department of Safety to "supervise and regulate certain motor vehicles," including commercial vehicles with a gross vehicle weight in excess of ten thousand and one pounds, and to "promulgate such safety rules and regulations as the department deems necessary." Tennessee Code Annotated section 65-15-122(b) provides that a person who, among other things, fails to "obey, observe or comply" with a rule or regulation of the department is guilty of a Class B misdemeanor. Neither of these statutory sections address the specific elements of the charged crime. The record is void, however, of any indication that the State introduced, or attempted to introduce, the specific regulation which Defendant was charged with violating.

Unlike statutes, this Court is not mandated to take judicial notice of a state agency's regulations, rules or policy decisions, including the Department of Safety. *See State v. McClure*, 74 S.W.3d 362, 371 (Tenn. Crim. App. 2001) (citing *State v. Edward Carl Womack*, No. W1999-01257-CCA-R3-CD, 1999 WL 1097971, at *6 (Tenn. Crim. App., at Jackson, Nov. 29, 1999), *no perm. to appeal filed*)). Rule 202(a) of the Tennessee Rules of Evidence mandates that courts take judicial notice of state statutes. Rule 202(b), however, provides that "[u]pon reasonable notice to adverse parties, a party may request that the court take, and the court may take, judicial notice of . . . all duly published regulations of federal and state agencies. . . ."

In *Womack*, the defendant moved to suppress the drugs found by an enforcement officer of the Tennessee Department of Safety after the officer had detained the defendant's commercial vehicle for a safety inspection. The State argued that the pervasively regulated business doctrine was applicable to motor carriers because of the extensive regulations regarding motor carriers, and thus supported the warrantless search. *See Womack*, 1999 WL 1097971, at *6-7. The State, however, "neither produced any applicable regulations or rules nor requested that the trial court take judicial notice of the regulations and rules of the Department of Safety governing safety inspections of motor carriers." *Id.*, 1999 WL 1097971, at *6. Before a trial court may take judicial notice of a state agency's rules or regulations, a party must request the trial court to do so and must give adequate notice to the adverse party. *Id.* The *Womack* court concluded that without the State's compliance with Rule 202(b) of the Tennessee Rules of Evidence, and the introduction of the applicable regulations which would satisfy the pervasively regulated business doctrine and thus support the warrantless search, the fruits of the search must be suppressed. *Id.*

In *State v. Chearis*, 995 S.W.2d 641, 643 (Tenn. Crim. App. 1999), this Court found that a trial court may not take judicial notice of a municipal ordinance absent compliance with Rule 202 of the Tennessee Rules of Evidence. In that case,

> [t]he State's witnesses testified that defendant was arrested for violation of a Somerville city ordinance prohibiting the possession or consumption of alcohol in a public place. However, in spite of defendant's objection, at no time was a copy of that ordinance entered, or attempted to be entered, into evidence by the state. Nor do we find in the record notice by the state of its intent to request that judicial notice be taken of the ordinance. Given the dictates of Rule 202, the trial court could not take judicial notice of the ordinance, nor can this Court.

*Id*. at 643.

In the case *sub judice*, there is no indication in the record that the State entered the applicable motor carrier safety rules or regulations into evidence, or that the State followed the mandates of Rule 202, or that the parties stipulated that possession of alcohol in a commercial vehicle is a violation of the motor carrier safety rules. Without any proof that Defendant's conduct was in violation of a motor carrier safety rule or regulation, we conclude that the State failed to prove by a preponderance of the evidence that Officer Tyler had probable cause to search Defendant's tractor-trailer for contraband. Therefore, the trial court erred in denying Defendant's motion to suppress.

As to Defendant's DUI conviction in count one of the indictment, however, we find that the trial court's error in denying Defendant's motion to suppress was harmless error. Defendant was indicted in count one of "commit[ting] the offense of driving while intoxicated by driving, operating or exercising physical control of a commercial motor vehicle on premises which is generally frequented by the public at large with a blood alcohol concentration of four-hundredths of one percent (.04%) or more; [sic] a Class A misdemeanor, in violation of T.C.A. § 55-50-408 . . ." Although driving a commercial vehicle while intoxicated is illegal in Tennessee, possessing alcohol in one's commercial vehicle is not an element of the offense. Thus, as for the DUI conviction, there is no evidence in the record that Officer Taylor had probable cause to search Defendant's tractor-trailer for contraband as required to support a warrantless search under the automobile exception. See *Carroll*, 267 U.S. at 149, 45 S. Ct. at 283-84.

Nonetheless, Defendant admitted that she was driving her commercial vehicle in the parking lot of a truck stop when she struck another vehicle parked at a garage. Mr. Trotter testified that his test of Defendant's blood sample showed a concentration of 0.20 percent ethanol, which is in excess of the alcohol level required to sustain a conviction under Tennessee Code Annotated section 55-50-408. Accordingly, we conclude that the trial court's admission into evidence of the fruits of Officer Taylor's search was harmless error as to Defendant's DUI conviction.

As for Defendant's conviction in count two of the indictment, we cannot conclude that the trial court's error in denying Defendant's motion to suppress was harmless error. Ordinarily, we

would remand the case for a new trial. Based on our review of the record, however, we have been unable to find any evidence which would sustain Defendant's conviction for violation of the motor carrier safety rules as charged in count two of the indictment. Although Defendant did not challenge the sufficiency of the evidence supporting her convictions on appeal, this Court has discretion pursuant to Rule 52(b) of the Tennessee Rules of Criminal Procedure to take notice at any time of plain error which affects a substantial right of the accused where it may be necessary to do substantial justice. *See State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999); *State v. Ogle*, 666 S.W.2d 58, 60 (Tenn. 1984). When deciding whether an error constitutes "plain error," we consider five factors:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994).

The trial record as well as the suppression hearing record are void of any proof that Defendant violated the provisions of a motor carrier safety rule. It is axiomatic that the State is required to prove each element of the charged offense. Tenn. Code Ann. § 39-11-201. Tennessee Rule of Appellate Procedure 13(e) provides that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Thus, the first three factors regarding plain error are satisfied. There appears to be no tactical reason for Defendant to have waived the issue of insufficient evidence to support her conviction in count two of the indictment. Therefore, the fourth factor is satisfied. Finally, if the State did not offer any proof that Defendant's conduct was in violation of a motor carrier safety rule, and the parties did not stipulate thereto, it is necessary that we consider the issue in order "to do substantial justice."

From our review of the record, we find that the State failed to prove that Defendant committed the crime as charged in count two of the indictment. Accordingly, such error is not harmless, and we conclude that the conviction must be reversed and the charge dismissed in accordance with Rule 13(e) of the Tennessee Rules of Appellate procedure.

## III. Sentencing Issues

The trial court sentenced Defendant to eleven months, twenty-nine days for each offense. The offense of driving a commercial vehicle under the influence of alcohol, first offense, is a Class A misdemeanor, with a sentence of eleven months, twenty-nine days, with incarceration of at least forty-eight hours and up to the maximum of eleven months, twenty-nine days. *See* Tenn. Code Ann. §§ 55-50-405(a)(6)(A) and 55-10-403(a)(1).

At the sentencing hearing, the trial court sentenced Defendant to eleven months, twenty-nine days for her DUI conviction, stating that "[t]he only question then is how much of that [sentence] would be served in confinement." In determining the percentage of her sentence to be served in confinement, the trial court placed some weight on Defendant's history of prior traffic violations. *See id.* § 40-35-114(2). In mitigation, the trial court considered the fact that the offenses were committed under such unusual circumstances that it was unlikely that a sustained intent to violate the law motivated Defendant's conduct. *See id.* § 40-35-113(11). The trial court also considered, however, application of enhancement factor (17), the crime was committed under circumstances under which the potential for bodily injury to a victim was great, based on the presence of the mechanic working near the truck that was damaged in the collision. *See id.* § 40-35-114(17).

Based on its consideration of the foregoing and the principles of sentencing, the trial court stated:

> Given all those factors, I find, really, the only thing I need to set is the *release eligibility date* now, because I've set the sentence in the case. And I fix the *release eligibility date* in this case *at five percent*. I think that translates to about eighteen days. . . . Sentences, as I said, are concurrent. The place of confinement is the county jail. Probation for less – for greater than the forty-eight hours is denied because of the circumstances of the offense, as I've already alluded to, the wreck of the stationary vehicle in which a man was working, the fact that it was a tractor-trailer rig, and because there was beer in the cab of that rig, and the deterrent consideration and, of course, *what the jury found in the case to be false testimony under oath*. (Emphasis added.)

Defendant's sentencing judgment reflects that she is to serve her whole sentence of eleven months, twenty nine days for her DUI conviction, but is eligible to participate in work release, furlough, trusty status, and rehabilitative programs while in custody, after service of five percent of her sentence, or approximately eighteen days. Based on our review of the record, it is unclear whether the trial court by setting a "release eligibility date" of eighteen days intended to order Defendant to serve eighteen days in confinement before being eligible for in-custody programs or to serve eighteen days in confinement before being placed on probation.

In misdemeanor sentencing, the trial court must first establish the length of the sentence to be imposed. Tenn. Code Ann. § 40-35-302(b). In the instant case, the trial court imposed the maximum sentence of eleven months, twenty-nine days for Defendant's Class A misdemeanor conviction. After setting the length of the misdemeanor sentence,

> the court shall fix a percentage of the sentence which the defendant shall serve. After service of such a percentage of the sentence, the defendant shall be eligible for consideration for work release, furlough, trusty status and related rehabilitative programs.

*Id*. § 40-35-302(d).

The determination of an eligibility release percentage in misdemeanor sentencing is not synonymous with determining the "release eligibility date" in felony sentencing which is the date on which a convicted felon may ordinarily be eligible for parole and release from confinement. *Compare* Tenn. Code Ann. § 40-35-302(c) *with* Tenn. Code Ann. § 40-35-501(b); *see also State v. Jermaine Reshawn Scott, Anthony Ray Tharpe, and Felicia Ann Taylor*, No. W2002-01812-CCA-R3-CD, 2003 WL 23100466 (Tenn. Crim. App., at Jackson, May 6, 2003), *no perm. to appeal filed; State v. Lauren El. Leslie and Janie Whitehead*, No. 03C01-9804-CR-00125, 1999 WL 153773, *4 (Tenn. Crim. App., at Knoxville, Mar. 23, 1999), *perm. to appeal denied* (Tenn. Sept. 13, 1999) (A convicted felon's release eligibility date percentage has no relationship to misdemeanor sentencing).

A misdemeanor defendant's eligibility for participation in custodial programs does not equate to a release from confinement. As a panel of this Court observed in *Leslie*,

> [t]he actual decision to admit the defendant to [a rehabilitative] program is entrusted to the discretion of "the administrative authority governing the rehabilitative program." Tenn. Code Ann. § 40-35-302(d). The percentage contemplated by subsection (d) does not establish a *per se* date for release from confinement altogether because release depends upon the future discretionary act of an administrative agency and, in any event, any release is part of a structure "rehabilitative program" and may be only partial or sporadic in nature.

*Leslie*, 1999 WL 153773, at *4.

Tennessee Code Annotated section 40-35-302 "contemplates that the trial court will treat separately the issues of 'percentage' and probation" in misdemeanor sentencing. *State v. Scott Wyatt*, No. M1998-00470-CCA-R3-CD, 1999 WL 1266338, at *6 (Tenn. Crim. App., at Nashville, Dec. 29, 1999), *perm. to appeal denied* (Tenn. 2000). The trial court's order setting Defendant's "release eligibility date" at eighteen days, however, is more analogous to the use of a percentage for calculating a release eligibility date for parole in felony cases. *See* Tenn. Code Ann. § 40-35-501. It is possible that the trial court contemplated that Defendant would be released on probation after serving five percent, or eighteen days, of her Class A misdemeanor sentence in confinement.

A careful review of the record does not resolve the conflict between the trial court's sentencing considerations pronounced at the sentencing hearing and the sentencing judgment. Accordingly, we reverse Defendant's sentence for her conviction for driving a commercial vehicle under the influence of alcohol and remand for a new sentencing hearing.

To provide guidance on remand, we will address Defendant's challenge on appeal to the enhancement factors considered applicable by the trial court.

In its sentencing determinations, the trial court is directed to consider the nature and characteristics of the criminal conduct involved. *See* Tenn. Code Ann. § 40-35-210(b)(4). The trial court considered that both an open and unopened bottle of beer were in Defendant's cab at the time

of the accident. Although possession of alcohol in the vehicle is not an element of the offense of driving a commercial vehicle under the influence of alcohol, *see id.* §§ 55-5-405(a)(1)(A); 55-10-401(a), this evidence was discovered during a search that did not meet constitutional standards. Accordingly, the trial court may not consider this evidence in its sentencing determinations relative to Defendant's DUI conviction.

Defendant argues that the trial court's consideration of enhancement factor (17) was inappropriate because there was no proof that there was a "victim" of her offense. The trial court acknowledged that enhancement factor (17) is generally not applicable to sentencing considerations for DUI convictions, but based its application of this factor on the circumstances of Defendant's offense which involved "an eighteen-wheeler hitting a vehicle that was stationary with a man working close to it with beer in the tractor-trailer."

We conclude, however, that the trial court's consideration of enhancement factor (17) was inappropriate. Our Supreme Court has stated that unlike enhancement factor (11), "[t]here is nothing in the statutory language of [this] enhancement factor to indicate that it applies to potential victims or that it applies simply because the offense was committed in the presence of other individuals." *State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002). This court has previously stated "that factor (17) 'can only be applied in cases involving crimes with a specific victim' and ruled that the trial court could not use factor (17) to enhance the defendant's DUI sentence because DUI is a crime that lacks a named victim." *State v. James F. Monk*, No. E2003-02241-CCA-R3-CD, 2004 WL 1562530, at *6 (Tenn. Crim. App., at Knoxville, July 12, 2004), *perm. to appeal denied* (Tenn. May 23, 2005) (quoting *State v. Brenda F. Jones*, No. W2002-00751-CCA-R3-CD, 2003 WL 21756681, at *6 (Tenn. Crim. App., at Jackson, July 29, 2003), *no perm. to appeal filed*); *See also State v. Melissa A. Mellinger*, No. M2002-01029-CCA-R3-CD, 2003 WL 22937749, at 6 (Tenn. Crim. App., at Nashville, Dec. 10, 2003), *perm. to appeal denied* (Tenn. May 10, 2004).

Based upon review of the record, however, it appears that the trial court could have applied enhancement factor (11) based on the circumstances of the case and the presence of the mechanic working on the truck that was struck by Defendant's vehicle. *See* Tenn. Code Ann. § 40-35-114(11) (The defendant had no hesitation about committing a crime when the risk to human life was high.) Enhancement factor (11) may be applied if it can be determined from the record that the defendant created a high risk to lives other than a victim of the offense. *See State v.* Bingham, 910 S.W.2d 448, 450 (Tenn. Crim. App. 1995) *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

We acknowledge that the trial court considered the need for deterrence in its sentencing determinations, noting that "[e]very court in the land has held that because we have such a huge national problem with drinking and driving and the consequence of it." A trial court's decision to impose a sentence of confinement based solely on the need for deterrence will not be disturbed so long as "a reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2)

incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit certain crimes." *Hooper*, 29 S.W.3d at 10 (Tenn. 2000).

In general, the trial court may not consider factors other those presented in court. *See* Tenn. Code Ann. § 40-35-210(g); *Hooper*, 29 S.W.3d at 12; *see also State v. Nunley*, 22 S.W.3d 282, 288 (Tenn. Crim. App. 1999) ("[A] court may not consider facts outside the record that are within the judge's personal knowledge under the guise of taking judicial notice." Other than a general observation that driving while intoxicated is a problem of national concern, the trial court in the case *sub judice* did not make any factual findings "containing comparisons to indicate increased [driving while intoxicated] in [the county] that would require a need for deterrence." *State v. Fields*, 40 S.W.3d 435, 442 (Tenn. 2001).

In *Hooper*, the Supreme Court held that "the record must contain *some proof* of the need for deterrence before a defendant, who is otherwise eligible for probation or other alternative sentence may be incarcerated." *Id.* at 9. Although the use of statistics is not required, "testimony by someone with special knowledge of the level of a particular crime will generally be sufficient. . . ." *Id.* at 11.

We note that the issue in *Hooper* was somewhat narrow; it addressed when a trial court can order incarceration based *solely* on deterrence. *Id.*, at 3, 9. and 13. If the trial court on remand finds that a sentence of incarceration is appropriate based solely on a need for deterrence, the trial court should consider the following factors:

> 1) Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole.
> . . .
> 2) Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior.
> . . .
> 3) Whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case.
> . . .
> 4) Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective.
> . . .
> 5) Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct results in previous arrests or convictions.

*Id*, at 10-12.

We also note that the trial court considered in its sentencing determinations "what the jury found in the case to be false testimony under oath." It is clear by its verdict that the jury resolved

any conflicts between Officer Taylor's testimony and Defendant's testimony in favor of the State. The jury, however, did not make a finding that Defendant committed perjury during her testimony at trial. Thus, there is nothing in the record to support the trial court's assumption that the jury found that Defendant "gave false testimony under oath," and consideration of this factor was inappropriate.

## CONCLUSION

After a careful review of the record, we affirm Defendant's conviction for DUI. We reverse Defendant's conviction for violation of the motor carrier safety rules and regulations, and dismiss that charge. We reverse Defendant's sentence for her DUI conviction, and remand for a new sentencing hearing consistent with this opinion.

_____
THOMAS T. WOODALL, JUDGE