IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

## STATE OF TENNESSEE v. CHARLES E. KILPATRICK, JR.

**Direct Appeal from the Criminal Court for Overton County**
**No. 3786  Leon Burns, Jr., Judge**

---

**No. M1999-01121-CCA-R3-CD - Decided June 23, 2000**

---

The defendant was convicted of possession of a controlled substance in a penal institution.  On appeal, he claims that the evidence was insufficient because the county jail is not a "penal institution" and that the trial court erred by admitting evidence of the controlled substance found in the defendant's cell, by allowing certain officers not listed on the indictment to testify, and by imposing the maximum sentence within the applicable range.  We hold that a county jail is a "penal institution" within the meaning of Tenn. Code Ann. § 39-16-201(a)(2), that a proper chain of custody was established for the controlled substance, that admission of the officers' testimony for chain of custody purposes was not error, and that the sentence was justified.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

WADE, P.J., delivered the opinion of the court, in which RILEY and OGLE, JJ., joined.

John B. Nisbet III, Cookeville, Tennessee, for the appellant, Charles E. Kilpatrick, Jr.

Paul G. Summers, Attorney General & Reporter, Marvin E. Clements, Jr., Assistant Attorney General, and Owen G. Burnett, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Charles Kilpatrick, Jr., was convicted in a bench trial of possession of a controlled substance in a penal institution.  The trial court imposed a six-year sentence, consecutive to prior sentences.  In this appeal of right, the defendant challenges the sufficiency of the evidence; questions the chain of custody for the controlled substance; objects to certain of the state's witnesses; contends a jail is not a penal institution; and argues that the sentence was excessive.

We find no error and affirm the judgment of the trial court.

On September 28, 1997, the defendant was incarcerated in the Overton County Jail. In a routine inspection of the defendant's cell, Officer Mike Randolph found a green army jacket underneath the defendant's mattress.  The jacket, which was too small for the defendant to wear, had

pockets in which there was a bag containing seeds. The defendant denied ownership of either the jacket or the seeds. Officer Randolph then found a bag of green leaf-like substance in the pocket of the shorts the defendant was wearing. In a more extensive search made after the defendant was removed from his cell, Officer Randolph found another bag of green leaf-like substance in the defendant's other pocket.

Sergeant John Robert Schoettle, Jr., assisted Officer Randolph with the evidence bag and the laboratory request form. Officer Randolph sealed the evidence in an envelope and provided it to Sergeant Schoettle, who taped the envelope and locked it in the trunk of his car. Ultimately, the sergeant provided the envelope to Chief Investigator Greg Phillips. Later, Sergeant Schoettle and Officers James Harris and Craig Story retrieved the envelope from the evidence room and transported it to the crime lab in Nashville.

The lab report, establishing that the substance was marijuana, was prepared by TBI Special Agent Glenn Everett, a forensic scientist. The report indicated Officer Harris delivered the sealed and initialed envelope on October 3, 1997. The laboratory number appeared in the report. Writing on the envelope established that Officer Randolph had provided the seal on the date of the offense. There were three bags of marijuana in the envelope. The seeds were not marked or analyzed but the two other bags contained 1.6 and 5.05 grams of marijuana, respectively.

Special Agent Everett returned the envelope. The envelope bore no indication of tampering. The laboratory file indicated that the evidence was presented to Officer Chip Buck in November of 1997. Officer Buck returned the evidence to the Overton County Sheriff's Department's evidence officer, who insured placement in the evidence room. Sergeant Schoettle, who shared exclusive access with Sergeant Frank Dial, removed the envelope for presentation as evidence at the trial.

The defendant, who was incarcerated in a cell open to other jail inmates, claimed that there was a considerable amount of clothing under his bunk and that much of it, including the jacket, was not his. He contended that Officer Randolph found the leafy substance in a pair of shorts which had been stored underneath the bunk. He specifically denied that Officer Randolph found any marijuana in the shorts he was wearing and maintained that the marijuana was not his.

David Powell, who shared the cell with the defendant, also contended that Officer Randolph found all of the marijuana in a milk crate under the bunk and found nothing in a pat-down of the defendant. Another inmate, Jonah Mainwaring, also contended that the officer found the plastic bags in the clothes pile rather than in the defendant's possession.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). When the sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Evans, 838 S.W.2d 185, 190-191 (Tenn. 1992).

In a bench trial, the findings of the trial judge who conducted the proceedings carry the same weight as a jury verdict. State v. Tate, 615 S.W.2d 161, 162 (Tenn. Crim. App. 1981). Questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and all factual issues raised by the proof are matters entrusted to the trier of fact. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court may neither reweigh nor reevaluate the evidence. Cabbage, 571 S.W.2d at 835.

Here, the trial court accredited the testimony of the state's witnesses, particularly that offered by Officer Randolph, and specifically rejected the testimony offered by defense witnesses Powell and Mainwaring. Because the fact-finder sees and hears the witnesses firsthand, our scope of review is limited. This court may not re-weigh the evidence provided or second-guess the credibility of the witnesses. It is the prerogative of the fact-finder to resolve conflicting evidence.

The elements of the offense at issue are as follows:

It is unlawful for any person to:
Knowingly possess [weapons, ammunition, explosives, intoxicants, legend drugs, or any controlled substances] while present in any penal institution where prisoners are quartered or under custodial supervision without the express written consent of the chief administrator of the institution.

Tenn. Code Ann. § 39-16-201(a)(2).

The defendant asserts that the evidence is insufficient because the term "penal institution" is not defined in the applicable statute. He maintains that the Overton County Jail is not a penal institution. Much of the argument is based upon our holding in State v. Kendrick, 10 S.W.3d 650 (Tenn. Crim. App. 1999), wherein a panel of this court held that Hay House, a community corrections facility for offenders granted conditional release, did not qualify as a penal institution. In our view, however, the plenary meaning of the statute is to preclude the presence of illegal drugs in any institution "where prisoners are quartered or under custodial supervision. . . ." Tenn. Code Ann. § 39-16-201(a)(1).

"The cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being aides to that end." Browder v. Morris, 975 S.W.2d 308, 311 (Tenn. 1998). The meaning of a statute is to be determined not from specific words in a single sentence or section but from the act in its entirety in light of the general purpose of the legislation; any interpretations should express the intent and purpose of the legislation. National Gas Distrib., Inc. v. State, 804 S.W.2d 66, 67 (Tenn. 1991); Loftin v. Langsdon, 813 S.W.2d 475, 478-79 (Tenn. App. 1991).

Criminal statutes are to be fairly interpreted, and strict construction is not required:

**Construction of criminal code.--**The provisions of this title shall be

construed according to the fair import of their terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code.

Tenn. Code Ann. § 39-11-104.

While the term penal institution is not defined in Tenn. Code Ann. § 39-16-201, it is defined for obstruction of justice purposes as "any institution or facility used to house or detain a person . . . [c]onvicted of a crime[,] or [a]djudicated delinquent by a juvenile court[,] or [w]ho is in direct or indirect custody after a lawful arrest." Tenn. Code Ann. § 39-16-601(4). While a Community Corrections sentence has been ruled "an alternative to incarceration and . . . non-custodial in nature," Bentley v. State, 938 S.W.2d 706 (Tenn. Crim. App. 1996), the county jail in which the defendant was detained falls, in our view, within the definition of penal institution contained in Tenn. Code Ann. § 39-16-601(4) and constitutes a "penal institution where prisoners are quartered or under custodial supervision" within the meaning of Tenn. Code Ann. § 39-16-201. See also generally Kendrick, 10 S.W.3d at 650. The issue, therefore, is not a basis for relief.

Next, the defendant argues that the state failed to establish a proper chain of custody for the marijuana offered as evidence at trial. He contends that Sergeant Schoettle was unable to account for the marijuana after he gave it to Chief Investigator Phillips, who, inferentially, placed the material in the evidence room. Officer Phillips did not testify. The defendant also asserts that Officer Harris, who transported the marijuana to the TBI Laboratory, could not establish that the evidence seized was that which went into the hands of TBI Agent Everett. In our view, the evidence was properly admitted at trial.

As a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody. State v. Goodman, 643 S.W.2d 375, 381 (Tenn. Crim. App. 1982). The purpose of the chain of custody requirement is to "demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence." State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993).

While the state is not required to establish facts which exclude every possibility of tampering, the circumstances established must reasonably assure the identity of the evidence and its integrity. State v. Ferguson, 741 S.W.2d 125, 127 (Tenn. Crim. App. 1987). The rule does not require absolute certainty of identification. Ritter v. State, 462 S.W.2d 247 (Tenn. Crim. App. 1970). This issue addresses itself to the sound discretion of the trial court, and the court's determination will not be disturbed in the absence of a clearly mistaken exercise of such discretion. State v. Beech, 744 S.W.2d 585, 587 (Tenn. Crim. App. 1987); State v. Johnson, 673 S.W.2d 877, 881 (Tenn. Crim. App. 1984).

Reasonable assurance, rather than absolute assurance, is the prerequisite for admission. The testimony of Sergeant Schoettle and Officer James Harris, who verified taking the evidence to and receiving it from Chief Investigator Phillips, provided a sufficient link with regard to that aspect of the chain of custody. Likewise, Agent Everett was able to confirm that the

-4-

envelope, routinely stored and tested, bore no indication of tampering. Thus, the integrity of the evidence was not unduly diminished by the procedure employed. The record establishes assurance that the substance was that taken from the defendant.

In a related issue, the defendant complains that the trial court erred by allowing Officers Chip Beck and Craig Story, who testified to aspects of the chain of custody for the marijuana, to appear as witnesses for the state. He cites Tenn. Code Ann. § 40-17-106 which requires the district attorney to include on the indictment the names of each of the witnesses to be called on behalf of the prosecution.

The purpose of furnishing names on an indictment or presentment is to prevent surprise to the defense. State v. Melson, 638 S.W.2d 342, 364 (Tenn. 1982). Evidence should not be excluded except when the defendant is actually prejudiced by the failure to comply with the rule and when the prejudice cannot otherwise be eradicated. State v. Baker, 751 S.W.2d 154, 164-65 (Tenn. Crim. App. 1987); State v. Morris, 750 S.W.2d 746, 749 (Tenn. Crim. App. 1987); State v. James, 688 S.W.2d 463, 466 (Tenn. Crim. App. 1984).

The defendant contends that he was prejudiced because those witnesses allowed the state to complete its chain of custody. Had this proof not been allowed, he submits that the trial court would have excluded the marijuana. See State v. Allen, 976 S.W.2d 661 (Tenn. Crim. App. 1997).

Neither Beck nor Story knew anything about the offense. While a proper chain of custody is a condition precedent to the submission of perhaps the most critical evidence presented at trial, the requirement qualifies as procedural in nature. It is no surprise when the various witnesses in the custody of contraband from the time of its seizure until its presentation as evidence appear as witnesses for the state. In our view, nothing would have been gained by the defense had the trial been continued to a later date. The defense knew or should have known that when chain of custody is challenged, a litany of witnesses, who otherwise know little about the case, will testify for the state. Thus, there was no prejudice.

As his last issue, the defendant complains that the trial court erred by imposing a six-year sentence, the maximum within the range, and by requiring that his sentence be served consecutively to his prior sentences. In response, the state contends that the trial court made findings of fact regarding the length and service of the sentence which are adequately supported by the record.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission

Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If the trial court's findings of fact are adequately supported by the record, this court may not modify the sentence even if it would have preferred a different result. State v. Fletcher, 805 S.W.2d 785 (Tenn. Crim. App. 1991). The presumption of correctness is, however, "conditioned upon the affirmative showing in the record that the trial court considered sentencing principles and relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The trial court must place on the record the reasons for the sentence. State v. Jones, 883 S.W.2d 597 (Tenn. 1994). The record in this case demonstrates that the trial court made adequate findings of fact.

Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. See Tenn. Code Ann. § 40-35-115. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[1] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;

---

[1]The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

(3)   The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4)   The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5)   The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)   The defendant is sentenced for an offense committed while on probation;

(7)   The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2); State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

Initially, possession of illegal drugs in a penal institution is a Class C felony offense. Tenn. Code Ann. § 39-16-201(b).  For a Range I offender, the term has a three-year minimum and a six-year maximum.  Tenn. Code Ann. § 40-35-112(a)(3).  The trial court found the following enhancement factors:

(1) that the defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(8) that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community.

Tenn. Code Ann. § 40-35-114.

The trial court gave "little or no weight . . . to the mitigating factors" claimed by the defendant: that "the defendant's criminal conduct neither caused nor threatened serious bodily injury" and that "the defendant committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct." Tenn. Code Ann. § 40-35-113(1), (11).

The record establishes that the defendant began using marijuana on a weekly basis in 1980 and continued to do so until early 1998. His prior criminal offenses include possession of marijuana, shoplifting, and a series of other charges which resulted in lenient dispositions. The pre-sentencing report includes an admission that the defendant had experimented with Valium and cocaine, although marijuana was "his drug of choice." In 1991, he was convicted for violating the Georgia Controlled Substances Act and was sentenced in Georgia to five years of confinement and five years on probation. In 1998, the defendant was convicted in this state of possession of Diazepam, a Schedule IV controlled substance, for sale or delivery; one count of possession of Lorazepam, a Schedule IV substance, for sale or delivery; one count of possession of Alprazolam, a Schedule IV substance, for sale or delivery; and one count of possession of one-half ounce of marijuana for sale or delivery. The Tennessee court imposed a sentence of four and one-half years, to be served consecutively to the 1991 Georgia sentence.

Because of the nature of the offense in this case and the nature of the defendant's prior criminal history, the trial court was warranted, in our view, in giving significant weight to enhancement factors (1) and (8). Moreover, the trial court exercised reasonable discretion in rejecting altogether or giving little weight to the defendant's contention that his conduct threatened no injury or lacked a sustained intent to violate the law. In fact, the defendant's conduct suggests a sustained intent to violate the law prohibiting the presence of drugs in a jail cell. The circumstances of his crime suggest that the defendant had developed a plan to acquire illegal drugs while incarcerated, hide the contraband from jail officials, and either use or provide for others in the jail access to the marijuana. A six-year sentence was justified.

At the time of this offense, the defendant had not fully served his 1991 Georgia sentence of five years confinement and five years on probation. Tenn. R. Crim. P. 32(c)(2) provides, in pertinent part, as follows:

> If the defendant has additional sentences or portions thereof to serve, as the result of his conviction in other states or in federal court, the sentence imposed shall be consecutive thereto unless the court shall determine in the exercise of its discretion that good cause exists to run the sentence concurrently and explicitly so orders.

The trial court concluded that the consecutive sentence was warranted because the defendant was convicted while on probation for the Georgia offense. See Tenn. Code Ann. § 40-35-115(b)(6). The record supports the probationary status. The trial court also ruled that the defendant had an extensive record of prior criminal activity. Tenn. Code Ann. § 40-35-115(b)(2). The record also supports that latter conclusion. Under all of the circumstances, the defendant deserved the

consecutive sentence.  See <u>Lane</u>, 3 S.W.3d at 460-61.

Accordingly, the judgment is affirmed.