IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 6, 2018 Session

**STATE OF TENNESSEE v. CHRIS BASHAM**

**Appeal from the Circuit Court for Obion County**
**No. 15-CR-100      Jeff Parham, Judge**

———————————————————

**No. W2017-00684-CCA-R3-CD**

———————————————————

The defendant, Chris Basham, appeals his convictions for improper display of registration plates, tampering with or fabricating evidence, simple possession of methamphetamine, simple possession of hydrocodone, and simple possession of alprazolam, for which he received an effective three-year sentence. On appeal, the defendant contends the trial court erred when not suppressing the evidence collected during the search of his car, and the prosecution failed to prove chain of custody. Following our consideration of the arguments of the parties, record, briefs, and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Charles S. Kelly, Sr., Dyersburg, Tennessee, for the appellant, Chris John Basham.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Jim Cannon, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

On September 8, 2015, Deputy John Garrett Buchanan, a patrol deputy with the Obion County Sheriff's Department, initiated a traffic stop of the defendant's vehicle due to his failure to illuminate his license plate. Once Deputy Buchanan activated his blue lights, the defendant slowed down but, despite passing multiple locations where he could have safely stopped his vehicle, continued driving a few hundred yards before pulling

over on the side of the highway. Deputy Buchanan approached the defendant's driver side window and observed the defendant sitting in the driver's seat of the vehicle, holding a Styrofoam cup of liquid. The defendant was visibly nervous and shaking. One of the defendant's hands was dripping wet. When Deputy Buchanan asked the defendant about his wet hand, the defendant denied his hand was wet. Deputy Buchanan then asked, "What's in your cup," and the defendant denied he had anything in the cup. Deputy Buchanan looked into the cup again and could see a torn plastic bag, the type used to package drugs, floating in the cup.

Deputy Buchanan asked the defendant to hand him the cup, and the defendant refused. Deputy Buchanan then showed the defendant his Taser and ordered him to put down the cup and exit the vehicle. The defendant did not immediately get out of the car, so Deputy Buchanan reiterated, "Lay the cup down and get out." As the defendant exited the vehicle, Deputy Buchanan placed himself between the defendant and door of the vehicle. In a manner Deputy Buchanan found to be intentional, the defendant dumped the contents of his cup onto the ground and said, "Oops." About a quarter of the cup's contents landed on the ground outside the vehicle, but the remainder spilled onto a floor mat inside the defendant's car. Deputy Buchanan then grabbed the defendant and placed him in handcuffs.

Deputy Buchanan called Deputy James Hall with the Obion County Sheriff's Department and Officer Andrew Kelly with the Union City Police Department for backup assistance. While waiting on their arrival, he patted down the defendant and noticed the defendant had something in his mouth. Deputy Buchanan asked, "What's in your mouth," to which the defendant responded, "Nothing." Deputy Buchanan tried to make the defendant spit out whatever was in his mouth. The defendant refused, and Deputy Buchanan proceeded with placing the defendant in the back of his patrol car.

Deputy Buchanan returned to the defendant's car and saw the ripped plastic bag and Styrofoam cup. He picked up the cup and noted crystals around the rim that appeared to be "crystal meth." He field tested the substance, and it tested positive for methamphetamine. The cup also had a red substance on it that appeared to come from candy. Deputy Buchanan found two handguns inside the car – one Colt Mustang .380 pistol in the front passenger seat and one Springfield HD .45 caliber pistol in the backseat. He placed the guns into evidence bags and eventually transported them back to the Obion County Sheriff's Department and placed them in the evidence locker.

After the guns were recovered, Deputy Hall and Officer Kelly arrived and assisted Deputy Buchanan with the inventory of the vehicle. They found a pill bottle in the driver's seat that showed a prescription for oxycodone but forensic testing later revealed it contained four hydrocodone pills, two oxycodone pills, and half an alprazolam pill.

Deputy Hall pulled a Gatorade bottle from his patrol car that he had been using as a water bottle for his canine, and he and Deputy Buchanan dumped the liquid from the floorboard into a Gatorade botte. Before pouring the liquid into the bottle, Deputy Buchanan performed a field test, and it tested positive for methamphetamine. Deputy Buchanan also found red "fireball" candies in every pocket of the vehicle.

Deputy Buchanan transported the defendant to jail, and Deputy Hall and Officer Kelly stayed behind to wait on the tow truck. As the defendant's vehicle was loaded onto the tow truck, Deputy Hall and Officer Kelly saw a plastic bag containing a white rocky substance believed to be methamphetamine lying in the grass next to the vehicle. The bag was coated in a red liquid that appeared to come from one of the red candies. Deputy Hill placed the plastic bag and substance in an evidence bag and brought it to Deputy Buchanan at the Obion County Jail.

All pieces of evidence collected at the scene were placed in evidence bags, sealed, initialed, and dated. Deputy Buchanan placed the bags in the evidence lockers at the Obion County Sheriff's Office. The evidence was then sent to the Tennessee Bureau of Investigation ('TBI") for testing and received by a technician on September 11, 2015, who initialed each piece of evidence received and brought it to Shalandus Garrett, the forensic scientist tasked with testing the evidence. Agent Garrett testified that she was given four sealed items – a liquid substance, a crystalline substance, four tablets, and a half a tablet. Due to a TBI policy that only allowed three items of evidence to be tested per case, Agent Garrett tested only the crystalline substance and the tablets. She determined the crystalline substance was 0.63 grams of methamphetamine, the four tablets were hydrocodone, and the half tablet was alprazolam. The testing process consumed part of each substance. Agent Garrett repackaged and resealed what remained of the evidence after testing.

Sheriff Jerry Vastbinder with the Obion County Sheriff's Department subsequently picked up the evidence and returned it to the Obion County Sheriff's Department. Sheriff Vastbinder gave the evidence to Investigator John Davis, who returned it to the evidence room and stored it in a secure evidence locker. Investigator Davis later released the evidence to Deputy Hall for a jury trial, but the trial was continued, so the evidence was returned to the evidence locker.

Following the continuance and in preparation for the new trial date, Deputy Hall resubmitted the evidence to the TBI crime lab. To avoid the TBI policy of testing only three pieces of evidence per case, Deputy Hall resubmitted the liquid, remaining hydrocodone tablets, and the partial alprazolam tablet around May 17, 2016, though the TBI's forensic chemistry report shows it was not received until June 16, 2016. Regardless, when resubmitting the evidence, Deputy Hall did not take the items out of

- 3 -

their original packaging. He just put the evidence, with the seals intact, into a new box and resubmitted the paperwork.

Deputy Hall then took the crystalline substance that Agent Garrett previously determined was methamphetamine to Officer Kelly so it could be resubmitted for testing separately. Officer Kelly was not in the office at the time, so Deputy Hall left the evidence in Officer Kelly's desk, which was inside a shared, locked office. Officer Kelly found the evidence the following morning in a small plastic package with the seals intact. He placed the package in a brown envelope, sealed it, initialed the seam, and submitted it to the TBI for analysis. The TBI's forensic chemistry report shows the crime lab received the evidence on May 25, 2016.

Peter Hall, also a forensic scientist with the TBI, tested the liquid submitted by Deputy Hall and determined it was positive for methamphetamine. Agent Hall also confirmed the tablets were hydrocodone, and the partial tablet was alprazolam. The crystalline substance submitted by Officer Kelly was .61 grams of methamphetamine. Agent Hall resealed the evidence, initialed it, dated it, and documented the case number. Sheriff Vastbinder later retrieved these items and returned them to the secure evidence lockers at the Obion County Sheriff's Department. Agent Hall was able to identify the evidence at trial because it contained the case number and his initials.

Prior to trial, the defendant filed a motion to suppress evidence due to the impossibility of establishing chain of custody without the testimony of Agent Garrett. The trial court reserved ruling on this motion. Ultimately, Agent Garrett testified at trial, and the defendant did not re-raise the motion.

The trial went forward on January 11, 2017. After hearing testimony from Deputy Buchanan, Deputy Hall, Agent Garrett, Sheriff Vastbinder, Officer Kelly, and Agent Hall, the State rested. The defendant declined to present evidence. The jury then found the defendant guilty of one count each of improper display of registration plates, tampering with or fabricating evidence, simple possession of methamphetamine, simple possession of hydrocodone, and simple possession of alprazolam. The jury found the defendant not guilty of possession of methamphetamine with intent, possession of a firearm during the commission of a dangerous felony, criminal attempt to possess a firearm during the commission of a dangerous felony, and a second count of tampering with or fabricating evidence. Following a sentencing hearing, the trial court sentenced the defendant to serve an effective three-year sentence.

The defendant filed a timely motion for a new trial in which he argued: the trial court erred when denying his motion to suppress because the stop lacked probable cause to search the defendant's vehicle; the trial court erred when denying the defendant's

motion for speedy trial; and the verdict was contrary to the weight of the evidence presented at trial. The trial court denied the motion, and this appeal followed.

## *Analysis*

On appeal, the defendant alleges the trial court erred when not suppressing the search, and the prosecution failed to prove chain of custody. The defendant waived his suppression argument by failing to include a complete record on appeal, and the defendant waived his chain of custody argument by failing to raise it in his motion for new trial. Notwithstanding his waiver of the issues presented on appeal, the defendant's arguments lack merit.

### A.     Suppression

The defendant concedes the original stop was appropriate and instead challenges the constitutionality of the subsequent arrest and search. The defendant raised this issue in a written pretrial motion.   While the record on appeal does not include a transcript from the hearing on the defendant's motion to suppress, it is clear the trial court conducted a hearing on the motion. Our review of the record indicates that during the hearing of the defendant's motion for a new trial, the trial court referenced "a pretty detailed ruling" given the day the motion to suppress was heard. The transcript documenting this detailed ruling, however, is not included as part of the appellate record.

It is well-established that the appellant has an obligation to ensure the record sufficiently provides this Court with enough information to allow for meaningful appellate review. *State v. Ballard*, 855 S.W.2d 557, 560-61 (Tenn. 1993). Where the record is missing all or a portion of the transcript of the proceedings relevant to an issue presented for review, appellate review of the issue is waived. *Id*. Accordingly, the defendant waived appellate review of the trial court's denial of his motion to suppress.

Notwithstanding waiver, the defendant's argument lacks merit. The defendant asserts Deputy Buchanan testified that the defendant appeared nervous, and nervousness alone cannot establish the reasonable suspicion of criminal activity. The facts presented at trial, however, indicated the defendant was arrested after Deputy Buchanan personally observed suspicious behavior, including nervousness, the defendant's refusal to answer his questions, and the presence of a torn plastic bag floating in a cup held by the defendant. *See State v. Gail Lynn Padgett (a.k.a "Gail Lynn Nevels")*, No. E2011-01279-CCA-R3-CD (Tenn. Crim. App. May 9, 2012) (noting an arrest made following a traffic stop was lawful where it was based on facts personally observed by the officer). The search of the defendant's car then occurred subsequent to this lawful arrest. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S.Ct. 2022 (1971) (holding that

- 5 -

exceptions to the warrant requirement include searches and seizures conducted incident to a lawful arrest).  The defendant is not entitled to relief on this basis.

### B.  Chain of Custody

The defendant next challenges the adequacy of the chain of custody surrounding the second phase of forensic testing.  According to the defendant, Deputy Hall broke the chain of custody for the methamphetamine crystal when he left it in Officer Kelly's office overnight rather than handing it directly to him.  The defendant further contends the State insufficiently established the chain of custody for the pills and liquid where a transfer form was not created, so the exact date of transfer is unknown.  We note, as did the State, that the defendant failed to raise these issues in his motion for a new trial, so they have been waived.  *See* Tenn. R. App. P. 3(e) (stating "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission . . . of evidence, . . . unless the same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived."  Despite the waiver, this argument also lacks merit.

Rule 901(a) requires evidence be authenticated or identified as a condition precedent to its admissibility.  Tenn. R. Evid. 901(a).  "[A] witness must be able to identify the evidence or establish an unbroken chain of custody," but absolute certainty is not required.  *State v. Kilpatrick*, 52 S.W.3d 81, 87 (Tenn. Crim. App. 2000) (internal citation omitted).  The trial court needs only reasonable assurance of the identity and integrity of the sample in order to admit it into evidence.  *Ritter v. State*, 462 S.W.2d 247, 250 (Tenn. 1970).  If the facts and circumstances that surround tangible evidence reasonably establish the identity and integrity of the evidence, the trial court should admit the item into evidence.  *State v. Cannon*, 254 S.W. 2d 287, 295 (Tenn. 2008).

In the present matter, Deputy Hall simply repackaged the evidence that had previously been submitted to the TBI and then kept in secure evidence lockers.  He did not open the evidence bags or unseal the samples.  Even though the crystalline substance Agent Garrett identified as methamphetamine sat in Officer Kelly's locked office overnight, the plastic box containing the narcotic remained sealed when Officer Kelly discovered it the following day.  When Agent Hall received the evidence for testing, the seals remained intact.  After testing, Agent Hall then resealed the evidence, and he was able to identify the evidence at trial.  The facts and circumstances surrounding the storage and transmission of the evidence established the identity and integrity of it.  The defendant is not entitled to relief on this issue either.

*Conclusion*

In accordance with the aforementioned reasoning and authorities, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE