IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 5, 2019

**STATE OF TENNESSEE v. ERNEST ERVIN**

**Appeal from the Criminal Court for Shelby County**
No. 17-00718        W. Mark Ward, Judge

_____

**No. W2018-01342-CCA-R3-CD**
_____

Defendant, Ernest Ervin, was convicted by a Shelby County jury of burglary of a motor vehicle. The trial court imposed a sentence of six years as a Career Offender to be served in confinement. On appeal, Defendant argues that the trial court erred by admitting surveillance video without sufficient authentication and that the evidence was insufficient to support his conviction. Having reviewed the entire record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Stephen C. Bush, District Public Defender; and Phyllis Aluko, Andrew Sullivan, and Katherine Oberembt, Assistant Public Defenders, Memphis, Tennessee, for the appellant, Ernest Ervin.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Senior Counsel; Amy P. Weirich, District Attorney General; and Holly Palmer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

**State's Proof**

At approximately noon on Monday, August 8, 2016, James Washington went out to his car which was parked in the Edison Apartments parking lot. He immediately

noticed the contents of the center console were strewn across the front seat, and he checked his "change box" and found that ten to fifteen dollars in change was missing from the vehicle. Mr. Washington noted that some dollar bills were still in the car, and he photographed everything. Mr. Washington testified that he last retrieved something from his car the day before, and he forgot to lock the car door. Mr. Washington called police, and officers arrived and took a report. He later went to the police station and gave a statement. Mr. Washington noted that the apartment complex had security cameras, and he parked within view of those cameras because his car had been burglarized on a previous occasion. Mr. Washington testified that he did not give anyone permission to rummage through his car or take his change.

On August 13, 2016, Detective Alvin Todd of the Memphis Police Department obtained the surveillance video footage from the apartment complex. He was familiar with the complex and its surveillance system. There were approximately fifteen cameras on the property, and he had downloaded video from there "[n]o less than three previous times." Detective Todd noted that in his experience the date and time stamp from the surveillance system was correct. He also used his watch to check the time. Detective Todd saved the video from the burglary in the present case to a USB drive, and he later burned it "to a C.D. for property and evidence." Detective Todd testified that there were three camera angles of the burglary. The video showed an African-American man wearing a yellow shirt, shorts, and a black backpack milling around the apartment complex at approximately 1:17 a.m. on August 8, 2016, attempting to open car doors. The man entered Mr. Washington's car at approximately 1:20 a.m. and rummaged around inside.

Detective Todd thought that he recognized the suspect in the video. He could not remember the suspect's name but remembered seeing the suspect at the precinct a few days prior to August 13, 2016, concerning an unrelated case. The suspect had visited the precinct on August 9, 2016, to report an assault that occurred earlier in the day. Detective Todd talked to a co-worker and a leasing agent at the apartment complex to discern the suspect's name. He obtained a name and pulled up a driver's license photo to compare with the video. Detective Todd determined the person in the video was Defendant.

Officer Ashton Britton of the Memphis Police Department was working as a "courtesy officer" with the Edison Apartments, where he lived in August 2016. The property manager called Officer Britton the morning after the burglary and asked him to look at the security camera footage. Officer Britton testified that he had looked at surveillance video from the apartment complex on previous occasions, more than a dozen times, and he had never known the date/time stamp to be inaccurate. Officer Britton testified that he watched surveillance video from the three angles and recognized the suspect in the video to be Defendant. He was one-hundred percent certain of Defendant's identity. Officer Britton had seen Defendant "at least three times" in the past; twice for

five to ten minutes and once for approximately an hour. During those previous meetings, Officer Britton was "face-to-face" with Defendant. Officer Britton gave Defendant's name to the property manager of the apartment complex.

Officer Enis Jackson of the Memphis Police Department interacted with Defendant when Defendant came to the police precinct on August 9, 2016, to talk about an alleged assault. Officer Jackson confirmed Defendant's identity and took photographs of Defendant because Defendant reported that he had been injured.

Detective James Harvell of the Memphis Police Department investigated Defendant's assault complaint and met with him at the Regional One Hospital on August 9, 2016. Detective Harvell then drove Defendant to the North Main Precinct to discuss the assault. He identified Defendant in a still photograph taken of Defendant walking into the precinct. Detective Harvell estimated he spent thirty minutes to an hour talking to Defendant. Sometime later, Detective Harvell viewed the surveillance video of the burglary in the present case. He told Detective Todd that he believed the person in the video was Defendant. He was one-hundred percent certain of his identification. Detective Harvell noted that Defendant was wearing the same clothing in the video that he was wearing when Detective Harvell talked to him on August 9.

**Defendant's Proof**

Defendant introduced his medical records from Regional One Hospital through Joanne Hunter, the custodian of medical records. The records were from Defendant's visit to the hospital on August 9, 2016. The notes from the records reflected that Defendant arrived at the hospital at 12:05 p.m. The nurse's notes reflected that Defendant left the hospital at 12:27 p.m. Ms. Hunter agreed that she did not personally record any times on the records and that she relied on the work of other people. The records reflected that Defendant refused treatment at the hospital.

Vernita Swopshire testified at trial that she was dating the Defendant at the time of the burglary, and they had spent the weekend of August 6-7, 2016, together at the Regal Inn on Third Street. She had no documentation of the hotel stay. However, she remembered the dates specifically because she works as a cafeteria manager and it was the first week of school. She testified that on Sunday, August 7, they spent the night together and both went to bed at approximately 10:30 p.m. She did not recall Defendant getting up in the middle of the night, but acknowledged it was possible. She testified that the man depicted in the Edison Apartments' video "kind of look[ed] like" Defendant, but was "bigger." Ms. Swopshire testified that she cared about Defendant and wanted to help him out. She preferred that he not be incarcerated. She said that she could not lie to keep Defendant out of jail.

On cross-examination, Ms. Swopshire testified that she and Defendant had dated on and off for seven years. She admitted that she had been afraid of Defendant at one time in the past, but she was not testifying on his behalf out of fear. Ms. Swopshire acknowledged that she did not tell police in September 2016, when Defendant was arrested, that she was with him on the night of the burglary.

**ANALYSIS**

## I. Authentication of the Edison Apartments surveillance video

Defendant argues that the trial court improperly admitted surveillance video from the Edison Apartments without adequate authentication. In terms of admissibility of evidence, trial courts have broad discretion, and their decisions will not be disturbed absent an abuse of discretion. *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). An abuse of discretion occurs when a trial court applies an incorrect legal standard or reaches an illogical or unreasonable decision and injustice toward the challenging party results. *State v. Plyant*, 263 S.W.3d 854, 870 (Tenn. 2008).

Tennessee law requires authentication or identification of all evidence prior to admission in a trial. Tenn. R. Evid. 901(a). According to Rule 901(b), authentication may be accomplished by the testimony of a witness with knowledge that "the matter is what it is claimed to be." Tenn. R. Evid. 901(b)(1). To authenticate tangible evidence, a witness must, "be able to identify the evidence or establish an unbroken chain of custody." *State v. Kilpatrick*, 52 S.W.3d 81, 87 (Tenn. Crim. App. 2000).

Requiring tangible evidence to be authenticated functions to "demonstrate there has been no tampering, loss, substitution, or mistake with respect to the evidence." *State v. Braden*, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993). Rule 901 does not require absolute certainty of identification. Rather, the circumstances established must "reasonably assure the identity of the evidence and its integrity." *State v. Ferguson*, 741 S.W.2d 125, 127 (Tenn. Crim. App. 1987); *Ritter v. State*, 462 S.W.2d 247, 249 (Tenn. Crim. App. 1970). If the tangible evidence is "unique, readily identifiable, and relatively resistant to change," the required testimony needs only to confirm the evidence's relevance. *State v. Cannon*, 254 S.W.3d 287, 309 (Tenn. 2008).

Defendant contends that because Detective Todd did not physically see the Defendant on the night of the burglary, he could not provide a sufficient authentication for the video at trial. Defendant also argues that Detective Todd could not guarantee that the time and date stamps were accurate because did not have a hand in installing or maintaining the security cameras at the apartment complex.

Mr. Washington identified his car on the video, and he confirmed the location of the crime. He testified that he forgot to lock his car and upon discovering the theft, took

a picture of the contents of the console that had been dumped out onto the driver's seat. The footage on the surveillance video shows Defendant opening the victim's unlocked car door.

Detective Todd testified that he had training on how to obtain an accurate time/date stamp from a video, and he followed his training in obtaining the surveillance video in this case. He noted that he was familiar with the Edison Apartments and their video surveillance system. In fact, he had downloaded video from that system "[n]o less than three previous times." In his experience, the date and time stamp from the surveillance system was correct, and he also used his watch to check the time in this case. Detective Todd saved the video pertaining to the burglary in the present case to a USB drive, and he later burned it "to a C.D. for property and evidence." At trial, Detective Todd confirmed that he had watched the entire video and recorded what he watched. He also stated that the contents of the video introduced at trial as Exhibit Three was what he watched. Detective Todd further testified that he recognized the suspect on the video to be Defendant, who had been at the North Main Precinct on August 9, 2016, to report an assault. He noted that the suspect in the video was wearing a yellow shirt, shorts, and a black backpack.

Officer Ashton Britton confirmed Detective Todd's authentication of the surveillance video. He worked as a "courtesy officer" at the Edison Apartments, and he also lived there. The property manager called Officer Britton to look at the surveillance video of the burglary the morning after the burglary. Officer Britton testified that he had looked at the surveillance video from the apartment complex on previous occasions, and he had never known the date/time stamp to be inaccurate. He watched the video of the burglary in this case and recognized the suspect to be Defendant, whom he had met at least three times in the past. Detective James Harvell also viewed the surveillance video and identified Defendant as the person depicted on the video burglarizing Mr. Washington's vehicle. He noted that Defendant was wearing the same clothing in the video that he was wearing when Detective Harvell talked to him on August 9, 2016, on an unrelated matter. We reject Defendant's argument that the video was improperly authenticated. *See State v. Osayamien Ogbeiwi*, No. W2010-00117-CCA-R3-CD, 2011 WL 3276188, at * 12 (Tenn. Crim. App. July 29, 2011)(The trial court did not err when it admitted security camera footage because it was introduced during the testimony of the officer who reviewed and retrieved the footage shortly after the offense, the video "supplemented the testimonies" of witnesses, and the defendant admitted to being "the gunman seen on the video shooting the victim"). Defendant is not entitled to relief on this issue.

## II.    Insufficient evidence to sustain conviction

Defendant contends that the evidence was insufficient to sustain his conviction for burglary of a motor vehicle because the State did not prove his identity as the person who committed the offense.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009) (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see* Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (citing *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005); *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *Hanson*, 279 S.W.3d at 275). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." *Wagner*, 382 S.W.3d at 297 (citing *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)).

"The identity of the perpetrator is an essential element of any crime." *State v Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving beyond a reasonable doubt the identity of the defendant as a perpetrator. *State v. Cribbs*, 967 S.W.2d 773, 779 (Tenn. 1998). Identity may be established by either direct evidence or circumstantial evidence, or a combination of the two. *Thompson*, 519 S.W.2d at 793; *see also State v.*

*Lewter*, 313 S.W.3d 745, 748 (Tenn. 2010). The identification of the defendant as a perpetrator is a question of fact for the jury after considering all the relevant proof. *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005) (citing *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993)).

"A person commits burglary who, without the effective consent of the property owner . . . enters any freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft or assault." Tenn. Code Ann. § 39-14-402(a)(4). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a).

The proof in this case was sufficient to establish Defendant's identity. Viewed in a light most favorable to the State, the proof shows that Defendant entered Mr. Washington's vehicle and took between ten and fifteen dollars in change. Mr. Washington testified that he did not give anyone permission to be inside his vehicle and take his change. Surveillance video, which we have already determined was properly authenticated and admitted, shows Defendant opening the door to Mr. Washington's vehicle and rummaging around inside the vehicle. Detective Todd, who obtained the video from the Edison Apartments, thought that he recognized the suspect in the surveillance video; however, he could not remember the person's name. He noted that the suspect had visited the North Main Precinct on August 9, 2016, to report an assault. Detective Todd spoke with a co-worker and a leasing agent at the apartment complex and ultimately determined that the person on the video was Defendant.

Both Officer Britton and Detective Harvell viewed the surveillance video of the burglary and identified Defendant as the suspect. Both men were one-hundred percent certain of Defendant's identity. Officer Britton had seen Defendant "at least three times" in the past: twice for five to ten minutes and once for approximately an hour. Officer Britton noted that he was "face-to-face" with Defendant during those meetings. Detective Harvell investigated Defendant's assault complaint in an unrelated case and spent thirty minutes to an hour talking to Defendant. He testified that Defendant was wearing the same clothing at the time of that interview that he was wearing in the video of the burglary.

Although Defendant argues that there were slight discrepancies in the clothing the suspect was wearing in the video from the burglary and in that of a still photograph taken of Defendant walking into the police precinct to report the assault, the jury resolved any discrepancies in favor of the State. The jury observed Defendant in the courtroom, viewed the video of the burglary, heard the witness' testimony, and determined that Defendant was the person who committed the burglary. Based on our review of the evidence, we conclude that the evidence was sufficient beyond a reasonable doubt to

support Defendant's conviction for burglary of a motor vehicle.  Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.


_____
THOMAS T. WOODALL, JUDGE