FILED

12/16/2021

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 28, 2021

## STATE OF TENNESSEE v. JOHN BRADFORD UNDERWOOD III

**Appeal from the Criminal Court for Bradley County**
**No. 17-CR-468     Andrew Freiberg, Judge**

_____

### No. E2020-01080-CCA-R3-CD
_____

The Defendant, John Bradford Underwood III, was convicted by a Bradley County Criminal Court jury of possession of contraband in a penal facility, a Class D felony. *See* T.C.A. § 39-16-201 (2018) (subsequently amended).[1] The trial court sentenced the Defendant as a Range II, multiple offender to eight years in confinement. On appeal, the Defendant contends that (1) the evidence is insufficient to support his conviction, (2) the trial court erred by denying his motion for a judgment of acquittal, and (3) the trial court erred by admitting an expert report identifying the contraband. Although we affirm the Defendant's conviction, we remand for the entry of a corrected judgment reflecting the conviction offense as possession of contraband in a penal facility.

**Tenn. R. App. P. 3 Appeal as of Right; Conviction Affirmed; Case Remanded for Corrected Judgment**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Robert Newton Meeks and Jessica Meeks Conine, Chattanooga, Tennessee, for the appellant, John Bradford Underwood III.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Stephen D. Crump, District Attorney General; and Craig Northcott, Assistant District Attorney General Pro Tem, for the appellee, State of Tennessee.

_____

[1] In 2017, the conviction offense of possession of contraband in a penal facility was a Class C felony. *See id*. § 39-16-201(c) (2018). However, in 2019, the statute was amended, lowering the offense to a Class D felony. *See id*. § 39-16-201(c)(2) (Supp. 2019). The sentencing hearing occurred in July 2020, and the record reflects that the Defendant received the benefit of the reduced felony classification pursuant to the Criminal Savings Statute. *See id*. § 39-11-112 (2018); *see also id*. § 40-35-117 (2019).

**OPINION**

The Defendant's conviction relates to a March 31, 2017 incident, during which a correction officer saw him smoking a hand-rolled cigarette while in custody at the Bradley County jail. The Defendant was indicted for possession of contraband in a penal facility and misdemeanor possession of marijuana, and the trial court granted the Defendant's motion for a judgment of acquittal for the misdemeanor possession charge at the conclusion of the State's evidence.

At the trial, former Bradley County Sheriff's Deputy Jeffery Harrison testified that he worked as a jail correction officer on March 31, 2017. He said that as he stood inside the booking department, he smelled a strong odor of marijuana coming from a secured room occupied by multiple male inmates. Deputy Harrison said that he could see inside the room through the security cameras and monitors. He said that he saw the Defendant take "a puff and pass[] it over to another inmate." Deputy Harrison said that he entered the room and asked every inmate, "Where's the weed?" He recalled that the inmates responded, "What weed?" Deputy Harrison said that ultimately, the Defendant stated, "Man, it was just weed," and that the Defendant "took ownership of it." Deputy Harrison said that when he asked the Defendant from where "it" came, the Defendant said it came from the Polk County Detention Center. Deputy Harrison said that afterward, every inmate in the room was searched. He said that after the room had been cleared of the inmates, he found "what appeared to be . . . a rolled up piece of paper like a joint on the floor." He recovered the paper and the green leafy substance inside the paper for further analysis.

Deputy Harrison testified that weed was the "street term" for marijuana and that he smelled marijuana coming from the secured room. He said that, based upon his prior experience with the substance, marijuana had a "strong skunky smell." He said that one end of the "little joint" had been burned, that he looked for the ignition source, and that he saw an electrical outlet had been "busted . . . with the tops of it around the outlet was kind of smoldered from where, I guess smoke hit." He said the jail had a zero-tolerance policy for marijuana possession.

On cross-examination, Deputy Harrison testified that he only referred to the substance as weed and that he did not use the term marijuana. He agreed that nobody referred to the substance as marijuana. Deputy Harrison stated that he worked the night shift on March 31, 2017, and that the inmates transported from Polk County arrived during the day shift. He said, though, that anyone who arrived from Polk County would have been confined to the secured room where the incident occurred. He thought twenty-five people were inside the room. He agreed that the Defendant did not admit that he brought the substance into the jail from Polk County. Deputy Harrison said that he had not received

-2-

official training about the smell of marijuana but that he knew the smell from "being around people that bring it in, . . . [the Defendant's] not the first one that would have brought something like that in."

On redirect examination, Deputy Harrison testified that the Defendant admitted possessing the cigarette and agreed that the Defendant was inside the jail at the time. Deputy Harrison recalled that the Defendant looked tired and sluggish and that the Defendant's speech was slurred slightly. Deputy Harrison stated that the Defendant's face and eyes were red and that he "looked like he was just slumped, tired."

Tennessee Bureau of Investigation (TBI) forensic analyst Lauren McCormick, an expert in forensic drug analysis, testified that in 2017, she analyzed the hand-rolled cigarette recovered at the jail. She stated that the microscopic examination was positive for marijuana, which required a "certain type of hair." She explained that marijuana had "characteristic hairs" called cystolithic hairs, which were a "bear claw shaped hair" on one side of the leaf, and had "covering hairs," which were similar to human arm hair, on the other side of the leaf. She said that during the examination, she looked for characteristic and covering hairs, along with glandular hairs but that cystolithic hairs were required for a positive marijuana identification. She said that she observed covering and cystolithic hairs and that, as a result, she concluded the substance was "cannabis."

Ms. McCormick testified that after she concluded that the substance was cannabis, she performed a color examination, which showed that the substance was positive for marijuana. Her report was received as an exhibit.

Ms. McCormick testified that the tests she performed in 2017 were "industry standard" and scientifically accepted to determine whether a substance was marijuana. She said, though, that since her examination, the testing protocols for cannabis had changed because "industrial hemp" had been legalized and that further analysis was now required to determine if a substance was marijuana or hemp. She said that pursuant to revised protocols, she could conclude that the substance in this case was cannabis but that she could not determine if the substance was marijuana or hemp without further testing. She explained that hemp contained 0.3% or less of tetrahydrocannabinol (THC), the primary psychoactive component, but that a quantitative chemical analysis to determine the amount of THC was not performed on the substance in this case. She said that, as a result, she could not determine if the substance was hemp or marijuana. She said that at the time of her analysis, the TBI did not have the ability to determine the amount of THC contained in a substance but that testing had since been developed. She said that the prosecutor requested the additional THC quantitative analysis but that the testing was not possible in this case because the amount of the substance submitted for analysis was too small. She

said that she was required to preserve half of any substance submitted for analysis but that the additional testing to determine the amount of THC in the substance would have required more than the entire sample.

The Defendant elected not to present any proof.

Upon this evidence, the Defendant sought judgments of acquittal. The trial court granted the Defendant's motion for a judgment of acquittal for misdemeanor possession of marijuana but denied his motion for the possession of contraband in a penal facility charge. The jury found the Defendant guilty of unlawful possession of contraband in a penal institution. This appeal followed.

## I. & II. Sufficiency of the Evidence & Motion for a Judgment of Acquittal

The Defendant contends that the evidence is insufficient to support his conviction. In a related issue, he contends that the trial court erred by denying his motion for a judgment of acquittal. He argues that the evidence failed to show that the substance was an intoxicant. The State responds that the evidence is sufficient and that the trial court properly denied the Defendant's motion. We agree with the State.

The standard of review for a trial court's denial of a motion for a judgment of acquittal is the "same standard that applies on appeal in determining the sufficiency of the evidence[.]" *State v. Little*, 402 S.W.3d 202, 211 (Tenn. 2013). In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn.

2009)).  A conviction may be based upon circumstantial evidence alone.  *See Dorantes*, 331 S.W.3d at 380-381.

It is unlawful to possess, in relevant part, any intoxicants or controlled substances "while present in any penal institution where prisoners are quartered or under custodial supervision without the express consent of the chief administrator of the institution."  T.C.A. § 39-16-201(b)(2), (b)(1).  A county jail is a penal institution.  *See State v. Kilpatrick*, 52 S.W.3d 81 (Tenn. Crim. App. 2000).  As the jury was properly instructed, an intoxicant includes, but is not limited to, marijuana, a controlled substance, a controlled substance analogue, a drug, a substance affecting the central nervous system, or any combination thereof.  *See* T.P.I – Crim. 38.01 (23rd ed. 2019); *see also State v. Carolyn Nadine Killian*, No. M2011-02591-CCA-R3-CD, 2012 WL 6171063, at *9 (Tenn. Crim. App. Aug. 14, 2012).

Viewed in the light most favorable to the State, the evidence reflects that the Defendant was seen by Bradley County Deputy Harrison smoking a hand-rolled cigarette inside a secured room at the jail.  Deputy Harrison entered the room and asked, "Where's the weed?," which he explained was slang for marijuana.  Deputy Harrison testified that he knew the smell based upon his experience in law enforcement.  Upon questioning by Deputy Harrison, the Defendant "took ownership" of the cigarette and stated, "Man, it was just weed."  Deputy Harrison recalled that the Defendant's face and eyes were red, that the Defendant looked "slumped" and tired, and that the Defendant's speech was slurred slightly.  We conclude that this evidence provided sufficient evidence for the jury to conclude that the Defendant possessed marijuana, an intoxicant, inside the jail.

In reaching this conclusion, we have not overlooked the Defendant's argument that the State failed to establish he possessed an intoxicant.  He points to Ms. McCormick's testimony that she could not determine at the time of the trial whether the green leafy substance was marijuana or hemp.  As we have already determined, Deputy Harrison's testimony established that the substance was an intoxicant.  Notwithstanding Deputy Harrison's testimony, however, Ms. McCormick's testimony does not support the Defendant's assertion.  Rather, her testimony reflects that pursuant to the modified testing protocols effective at the time of the trial, she could determine that the substance was cannabis.  She was unable to determine definitively whether the green leafy substance was marijuana or hemp.  We note that at the time of the offense, a legal distinction did not exist between marijuana and hemp, as possession of both substances was unlawful.

The record reflects that at the time of Ms. McCormick's analysis in 2017, she concluded that the substance was marijuana. However, on April 4, 2019, the possession of hemp was legalized in Tennessee.  Hemp is defined as Cannabis sativa containing not

-5-

more than 0.3% THC, and marijuana is defined as Cannabis sativa containing greater than 0.3% THC. *See* T.C.A. §§ 39-17-14 (2019); 43-27-101 (Supp. 2020). As Ms. McCormick testified, hemp and marijuana are both cannabis, and THC is the primary psychoactive component of the cannabis plant. Both substances contain THC, the psychoactive chemical. The only distinction between hemp and marijuana is the concentration of THC, an intoxicant. Therefore, the jury was permitted to determine that although Ms. McCormick could not determine at the time of the trial whether the substance was marijuana or hemp, the substance nonetheless contained an intoxicant. The Defendant is not entitled to relief.

### III.  Expert Report

The Defendant contends that the trial court erred by receiving Ms. McCormick's forensic chemistry report as an exhibit and by allowing the jurors to review the report during its deliberations. He argues that Ms. McCormick "repudiated" her initial conclusion that the substance was marijuana. He argues that the "divergent" conclusions misled the jury and that the court's failure to provide a limiting instruction and failure to redact marijuana from the report constitutes reversible error. The State responds that the report was consistent with Ms. McCormick's testimony regarding the testing before the change in the law.

Evidence is relevant and generally admissible when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401, 402. Questions regarding the admissibility and relevance of evidence generally lie within the discretion of the trial court, and the appellate courts will not "interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010) (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)).

A trial court abuses its discretion when it applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006). Relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

We conclude that the Defendant has failed to demonstrate an abuse of discretion in the trial court's receiving Ms. McCormick's report as an exhibit and allowing the jury to review the report during its deliberations. Ms. McCormick analyzed the substance pursuant to the testing protocols in effect in 2017. Her report reflects her conclusions at the time of her analyses, and the report was therefore relevant to the identity of the substance. In addition to her report, however, Ms. McCormick testified regarding the change in the law and that although the substance was cannabis, she could not determine pursuant to modified protocols effective at the time of the trial whether the substance was marijuana or hemp. The weight and value placed upon Ms. McCormick's testimony and report were resolved by the trier of fact, and this court will not reevaluate or reweigh the evidence. The Defendant is not entitled to relief on this basis.

The judgment form reflects that the jury convicted the Defendant of introduction of contraband into a penal facility. However, the record reflects that the Defendant was indicted for possession of contraband in a penal facility, and the trial transcript reflects that jury returned a guilty verdict for the same offense. As a result, we remand this case to the trial court for the entry of a corrected judgment reflecting the proper conviction offense.

_____
ROBERT H. MONTGOMERY, JR., JUDGE

-7-