IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 11, 2018

**STATE OF TENNESSEE v. JAMES WALLACE NORTON**

**Appeal from the Criminal Court for Sumner County**
**No. CR635-2015, CR722-2015    Dee David Gay, Judge**

_____

**No. M2018-00346-CCA-R3-CD**

_____

A Sumner County grand jury indicted the defendant, James Wallace Norton, with ten counts of sexual exploitation of a minor over one hundred images, twenty-three counts of sexual exploitation of a minor, and one count of aggravated sexual exploitation of a minor. Following trial, a jury found the defendant guilty of all counts, and the trial court imposed an effective sentence of twenty years. On appeal, the defendant argues the trial court erred in consolidating his two indictments, declining to force the State to make an election regarding which images constituted aggravated sexual exploitation of a minor, admitting testimony regarding the defendant's internet search history, and admitting the cell phone and contraband images without a proper showing of the chain of custody. He also challenges the sufficiency of the evidence to support his convictions and the applicability of the enhancement factors used in determining his sentence. After reviewing the record and considering the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Mike Anderson, Gallatin, Tennessee, for the appellant, James Wallace Norton.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Ray Whitley, District Attorney General; and Tara Wyllie, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

During March 2015, Special Agent Kathryn Gamble with the Department of Homeland Security ("DHS") was working undercover, investigating chatrooms on Kik, a cell phone application used to exchange texts, pictures, and videos. At the time, a chat group on Kik could only be found by searching for the exact name of the group or by receiving an invitation to join. On March 30, 2015, Special Agent Gamble was observing a chat group entitled "#kindergarden," which was being used to share sexually explicit pictures of children. She discovered a user named "jwnorton43" posted eight sexually explicit images of children to the group on March 24, 2015.

Following the discovery of the pictures, Special Agent Gamble issued a summons to Kik to produce information related to "jwnorton43"'s account. She received the IP addresses associated with his device, and discovered they were located outside of Nashville. She next issued a summons to Comcast, the internet provider that owned the account's two most frequently used IP addresses. One IP address came back to the defendant's residence, and the second came back to David Norton in Hendersonville. Special Agent Gamble then contacted a DHS agent in Nashville, Special Agent Jonathan Hendrix, to continue the investigation.

After reviewing the case file, Special Agent Hendrix determined the case did not meet the federal threshold and contacted Detective Ron Brawner at the Sumner County Sheriff's Office to pass on the information, although DHS continued to assist in the investigation. On May 13, 2015, Special Agent Hendrix and Detective Brawner obtained a search warrant for the defendant's residence in Millersville, which they executed early the next morning.

While the Sheriff's Department entered the residence, Special Agent Hendrix remained outside with the defendant, who was at home with his wife and two daughters. Detective Brawner read the defendant his *Miranda* rights, which the defendant verbally waived, prior to beginning the execution of the search warrant. The defendant told Special Agent Hendrix he had been using Kik for "probably two or three months," and, because Kik is a mobile application, the only place he stored sexually explicit images of children was on his cell phone. He estimated police would find "thirty, forty images" on his phone. The defendant stated he would repost some of the pictures he received via Kik, but not all of them. The defendant also stated that no one else had access to his cell phone and that his wife did not know he was looking at these images online. Special Agent Hendrix showed the defendant the pictures "jwnorton43" distributed in the "#kindergarden" chat group, and the defendant recognized six of the eight pictures. In addition, Special Agent Hendrix noticed the profile picture used by "jwnorton43" on Kik matched the tattoo on the defendant's left arm.

Following the execution of the search warrant, Special Agent Hendrix obtained control of the defendant's cell phone for a forensic examination, and turned the phone over to Special Agent Clint Cantrell, a DHS forensic agent based in Chattanooga. The phone was accompanied by a chain of custody report used to both identify the phone and document who handled the evidence. Special Agent Cantrell made arrangements for Detective Mike Tilley, a DHS liaison with the Chattanooga Police Department, to complete the forensic examination of the defendant's phone.

Detective Tilley began his forensic examination by taking pictures of the defendant's phone, including pictures of the phone's serial numbers. He then connected the phone to a Universal Forensics Extraction Device to extract the phone's data, including deleted and hidden data. During the examination, Detective Tilley discovered "over three thousand images" and "between twenty and thirty" videos depicting minors engaged in sexually explicit activity. The images were both saved to various folders and found in the file cache areas. Because of the way video files are stored on the phone, "at least a portion" of every video Detective Tilley found was actually viewed on the phone. Each of the three thousand seventy-four images and twenty-three videos were shown to the jury.

Detective Tilley's examination revealed the Kik messaging application was installed on the defendant's phone, and the username "jwnorton43" was used to log in. The defendant's text conversations on Kik revealed he asked other users to "send [their] youngest." In addition, Detective Tilley recovered some of the search terms the defendant used in Google: "young amateur sex" and "nude teen sex pictures." Following Detective Tilley's forensic examination, the phone and forensic examination report were returned to Detective Brawner via Special Agent Cantrell, Special Agent Wayne Dickey, and Special Agent Hendrix.

On August 6, 2015, a Sumner County grand jury returned two indictments against the defendant. The first charged him with ten counts of sexual exploitation of a minor over one hundred images and twenty-three counts of sexual exploitation of a minor, and the second charged him with one count of aggravated sexual exploitation of a minor. Prior to trial, the State filed a motion to consolidate the defendant's indictments. Following a hearing, the trial court granted the motion, finding both mandatory and permissive joinder allowed the indictments to be consolidated for trial.

At trial, the State called Special Agent Kathryn Gamble, Special Agent Jonathan Hendrix, Special Agent Clint Cantrell, Detective Ron Brawner, and Detective Mike Tilley as witnesses, and all rendered testimony consistent with the foregoing. The defendant's wife, Ashley Norton, testified she did not have access to the defendant's phone because it was never out of his possession, and she was not aware the defendant

was viewing or posting sexually explicit pictures of children on the internet. After the police searched her home, the defendant told Ms. Norton "he made a big mistake and wish[ed] he could take it back."

The defendant declined to present evidence. Following deliberations, the jury found the defendant guilty of all counts. The trial court imposed a sentence of ten years to be served at 100 percent for Counts 1-10, sexual exploitation of a minor over one hundred images, four years to be served at 30 percent for Counts 11-33, sexual exploitation of a minor, and six years to be served at 30 percent for Count 34 aggravated sexual exploitation of a minor. Specifically, Counts 1-10 were to be served concurrently with each other. Counts 11-33 were to be served concurrently with each other, but consecutively to Counts 1-10, and Count 34 would run consecutively to Counts 1-33, for an effective sentence of twenty years.

The defendant filed a timely motion for new trial and an amended motion for new trial, arguing the evidence was insufficient to support the defendant's convictions and the trial court erred in granting the State's motion to consolidate, admitting the cell phone and contraband images without a proper showing of the chain of custody, admitting testimony regarding the defendant's internet search history, refusing to question the jurors when they became visibly upset after viewing the videos introduced by the State, and refusing to force the State to make an election as to which images were related to the charge of aggravated sexual exploitation of a minor. The trial court denied the motion, and this timely appeal followed.

*Analysis*

## I. Consolidation

On appeal, the defendant first argues the trial court erred in granting the State's motion to consolidate his two indictments. The State contends both mandatory and permissive joinder were appropriate. We agree with the State.

The defendant was charged with the instant crimes in two separate indictments. Indictment number CR722-2015, returned August 6, 2015, charged the defendant with aggravated sexual exploitation of a minor on March 24, 2015.[1] Indictment number CR635-2015, returned August 6, 2015, charged the defendant with ten counts of sexual exploitation of a minor over one hundred images between January 1, 2015 and May 14, 2015, and twenty-three counts of sexual exploitation of a minor between January 1, 2015

---

[1] The original indictment incorrectly listed the date of offense as May 14, 2015. However, prior to trial, the indictment was amended to include the correct date.

- 4 -

and May 14, 2015. Prior to trial, the State filed a motion to consolidate the offenses in the two indictments pursuant to Tennessee Rule of Criminal Procedure 13.

In granting the State's motion to consolidate, the trial court stated the following:

[W]e have the same phone, we have the same images, we have the same period of time. So I find that it's based on the same conduct or [arose] from the same criminal episode. It can't be anything but that. It's the same phone. It's the same type of images in the same place on the phone. It's in B, within the jurisdiction of a single court, and C, . . . known to the appropriate prosecuting official at the time of the return of the indictments, presentment, or information.

I find that severance is not appropriate here to promote a fair determination of the [d]efendant's guilt or innocence. Each of these pictures will be offensive to the viewer and I think it's important here for the jury to see the entire scheme of images that the [d]efendant was possessing.

I believe that these are offenses that are part of a larger continuing plan or conspiracy, and that qualifies under *Harris*, and *Spicer,* under that criteria. I also find . . . that they are part of the same or similar character. I've just described that, same phone, same images from the phone, all offensive, all of naked children in a pornographic sense. Lastly, I must look at whether the evidence -- whether evidence of each offense is relevant to some material issue in the trial of all the other offenses. Now, the General did not specifically state this, other than concluding that there was a material issue. I find, if you look at the pictures separately, that the pictures show a common scheme or plan to possess and share some of this with others. So, you've got motive, intent. You've got absence of mistake here, and it -- I think it completes the whole picture of what the [d]efendant is doing, and I can't see how one batch would not be admissible with the other batch.

Lastly, I find, if we're looking at this as a permissive joinder, that the probative value of the evidence is not outweighed by the prejudicial effect. We're going to have numerous pictures here, and the prejudicial effect is going to take place after they see one picture.

A trial court's decision to consolidate offenses is reviewed on appeal for an abuse of discretion. *State v. Garrett*, 331 S.W.3d 392, 401 (Tenn. 2011). We will conclude that

a trial court abused its discretion when it applied incorrect legal standards, reached an illogical conclusion, based its ruling on a clearly erroneous assessment of the evidence, or applied reasoning that causes an injustice to the complaining party. *Id.* In reviewing a trial court's decision to consolidate offenses, we are mindful that,

> [B]ecause the trial court's decision of whether to consolidate offenses is determined from the evidence presented at the hearing, appellate courts should usually only look to that evidence, along with the trial court's findings of fact and conclusions of law, to determine whether the trial court abused its discretion by improperly joining the offenses.

*Spicer v. State*, 12 S.W.3d 438, 445 (Tenn. 2000).

Tennessee Rule of Criminal Procedure 13(a) allows a court to consolidate separate indictments, presentments, or informations for trial "if the offenses and all defendants could have been joined in a single indictment, presentment, or information pursuant to Rule 8." Tennessee Rule of Criminal Procedure 8 provides the circumstances under which offenses may be joined:

> (a) Mandatory Joinder of Offenses. Two or more offenses shall be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or the offenses consolidated pursuant to Rule 13, if the offenses are based on the same conduct or arise from the same criminal episode, within the jurisdiction of a single court, and known to the appropriate prosecuting official at the time of the return of the indictment(s), presentment(s), or information(s). A defendant shall not be subjected to separate trials for multiple offenses falling within Rule 8(a)(1) unless they are severed pursuant to Rule 14.

> (b) Permissive Joinder of Offenses. Two or more offenses may be joined in the same indictment, presentment, or information, with each offense in a separate count, or consolidated pursuant to Rule 13, if the offenses constitute parts of a common scheme or plan or if they are of the same or similar character.

If two or more offenses are joined or consolidated pursuant to Rule 8(b), the defendant has a right to severance unless two criteria are met: (1) "the offenses are parts of a common scheme or plan" and (2) "the evidence of one would be admissible in the trial of the others." Tenn. R. Crim. P. 14(b)(1).

Here, the defendant argues mandatory joinder is improper because the offenses are not based on the same conduct or criminal episode. However, the defendant's possession of sexually explicit images of children constitutes part of the same conduct or criminal episode as the distribution of sexually explicit images of children because he necessarily had to possess the images in order to distribute them. *See State v. Marlon Boyd*, No. W2017-00791-CCA-R3-CD, 2018 WL 3831329, at *5 (Tenn. Crim. App. Aug. 10, 2018), *perm. app. denied* (Tenn. Dec. 5, 2018). In addition, the offenses were within the jurisdiction of a single court and known to the Sumner County District Attorney at the time the indictments were returned. Therefore, the trial court did not err in determining the offenses were mandatorily joined under Rule 8(a).

Moreover, permissive joinder was also appropriate in this case. An undercover operation by the Department of Homeland Security revealed the defendant distributed eight sexually explicit images of children through the Kik mobile application on his cell phone on March 24, 2015. After executing a search warrant, police discovered over three thousand sexually explicit images of children on the defendant's cell phone between January 1, 2015, and May 14, 2015. The images the defendant possessed and distributed involved children in sexually explicit situations, he used the same cell phone for both offenses, and they were committed during the same time period. Following the pretrial hearing in this matter, the trial court determined the two offenses were of the same or similar character and part of a larger, continuing plan or conspiracy; evidence of each crime would be admissible at the trial of the other; and the probative value of the evidence outweighed any prejudicial effect. The record fully supports these determinations by the trial court. The defendant is not entitled to relief on this issue.

## II. Election

The defendant next argues the trial court erred in failing to force the State to make an election regarding the images it was relying on to establish the offense of aggravated sexual exploitation of a minor. The State contends an election was not necessary. We agree with the State.

Prior to closing arguments, the following exchange occurred outside the presence of the jury:

[PROSECUTOR]: Judge, I don't think I would like that as number -- Count No. 34. I mean, that's obviously the pictures that were sent in the Kik chatroom, but I don't think I've said that to the Jury. I think -- the rest of them, I think I covered for election purposes.

THE COURT: Okay, do you want to make a statement to the Jury about that?

[PROSECUTOR]: Do you want me to make a statement --

THE COURT: No, I think it's pretty obvious. I mean, based on his statement and the evidence that's been presented, I mean that's one kind of a general count that covers everything.

[PROSECUTOR]: That's true. I just -- I know I'm supposed to make an election in these types of cases. I just want to cover that for the record, that Count 34 was the -- were the original pictures that we put in through Kathryn Gamble.

THE COURT: Okay.

[PROSECUTOR]: So that's --

THE COURT: I don't think that's necessary, General.

[PROSECUTOR]: Okay, thank you.

During closing argument, the State made the following remarks:

As to aggravated sexual exploitation of a minor, the State must have proven beyond a reasonable doubt the existence of the following essential elements: That the [d]efendant did promote and distribute material which includes a minor engaged in sexual activity, that the [d]efendant did so knowingly. This refers to the last count, to the photographs that were uploaded to the Kik chatroom "[#]kindergarden." You saw those photographs. They were presented to you by Special Agent Kathryn Gamble. I would submit to you that those were minors engaged in sexual activity.

In Tennessee, a defendant is entitled to a unanimous jury verdict. *State v. Brown*, 992 S.W.2d 389, 391 (Tenn. 1999) (citing *State v. Shelton*, 851 S.W.2d 134, 137 (Tenn. 1993); *Tidwell v. State*, 922 S.W.2d 497, 501 (Tenn. 1996)). Therefore, "when the evidence indicates the defendant has committed multiple offenses against a victim, the prosecution must elect the particular offense as charged in the indictment for which the conviction is sought." *Brown*, 992 S.W.2d at 391 (citations omitted). Requiring an election "safeguards the defendant's state constitutional right to a unanimous jury verdict

- 8 -

by ensuring that jurors deliberate and render a verdict based on the same evidence." *State v. Johnson*, 53 S.W.3d 628, 631 (Tenn. 2001) (citing *Brown*, 992 S.W.2d at 391). However, when the evidence does not establish that multiple offenses have been committed, the need to make an election never arises. *State v. Adams*, 24 S.W.3d 289, 294 (Tenn. 2000).

Here, the State offered proof of only one act of distributing sexually explicit images of children. Special Agent Kathryn Gamble testified the defendant uploaded eight images to the "#kindergarden" chat group on March 24, 2018, and these images were shown to the jury. No other proof was submitted which could be construed to fit aggravated sexual exploitation of a minor. An election on this charge was not necessary. *Adams*, 24 S.W.3d at 294. Moreover, the State clearly outlined for the jury the facts upon which the State sought a conviction for aggravated sexual exploitation of a minor. *See State v. Terrence Lamont McDonald*, No. E2013-02524-CCA-R3-CD, 2015 WL 154251, at *16 (Tenn. Crim. App. Oct. 21, 2014), *perm. app. denied* (Tenn. May 14, 2015) (holding the failure to make an election is harmless error when the State effectively makes an election during closing argument). The defendant is not entitled to relief on this issue.

## III.   Search History

Next, the defendant argues the trial court erred in admitting testimony regarding the defendant's internet search history. The defendant contends the terms "young amateur sex" and "nude teen sex" cannot be calculated to find anything other than legal adult pornography. The State contends the evidence was properly admitted. We agree with the State.

Rule 404(b) of the Tennessee Rules of Evidence generally prohibits "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity with the character trait." *State v. Jones*, 450 S.W.3d 866, 891 (Tenn. 2014). Rule 404(b) allows such evidence in limited circumstances for purposes other than proving action in conformity with a character trait. *Id.* The rule sets out certain procedural requirements the trial court must follow:

> (1) The court upon request must hold a hearing outside the jury's presence;

> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b)(1)-(4). The comments to Rule 404(b) provide that evidence of other crimes, wrongs, or acts should be excluded unless relevant to an issue other than the character of the defendant, such as identity, motive, intent, or absence of mistake. *Jones*, 450 S.W.3d at 891; *see also* Tenn. R. Evid. 404, Advisory Comm'n. Cmt.

Trial courts are encouraged to take a "restrictive approach [to] [Rule] 404(b) . . . because 'other act' evidence carries a significant potential for unfairly influencing a jury." *State v. Dotson*, 254 S.W.3d 378, 387 (Tenn. 2008). In *Dotson*, our Supreme Court explained the policy in favor of exclusion:

> The rationale behind the general rule is that admission of other wrongs carries with it the inherent risk of the jury convicting a defendant of a crime based upon his or her bad character or propensity to commit a crime, rather than the strength of the proof of guilt on the specific charge . . . . As this Court has consistently cautioned, the jury should not "be tempted to convict based upon a defendant's propensity to commit crimes rather than . . . evidence relating to the charged offense."

*Id*. Provided the trial court substantially complied with the procedure of Rule 404(b), the trial court's decision to admit or exclude evidence will not be overturned on appeal absent an abuse of discretion. *Jones*, 450 S.W.3d at 891. A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008). If the trial court failed to substantially comply with the strict procedural requirements of Rule 404(b), then no deference is given to the trial court's decision to admit or exclude evidence, and this Court will determine admissibility based on the evidence presented at the jury out hearing. *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997).

Prior to trial, the defendant requested a hearing to determine what 404(b) evidence the State could admit at trial. At the hearing, defense counsel told the trial court he did not believe the State intended to introduce evidence under 404(b), and the trial court granted the defendant's motion prohibiting the State from introducing 404(b) material at trial.

At trial, the State asked Detective Mike Tilley about Google searches found on the defendant's phone. The defendant objected, and the trial court held a jury out hearing to determine whether testimony about the defendant's internet search history was admissible. During the jury out hearing, the State argued the Google searches for "young amateur sex" and "nude teen sex" were made within the indictment period. The searches showed the defendant did not receive sexually explicit images of children by accident, as the defendant had insinuated during opening argument. Instead, the State argued, they showed he was actively seeking sexually explicit images of children. The defendant argued the searches simply showed the defendant was looking for legal adult pornography. The trial court ruled the testimony regarding the defendant's internet search history was admissible to show intent and knowledge. The trial court also ruled the proof was clear and convincing, and the probative value outweighed any danger of unfair prejudice. In particular, the trial court noted the jury would be viewing three thousand images and twenty-three videos later in the trial, and the mention of two Google searches would not create unfair prejudice in light of the remaining evidence. The trial court substantially complied with the requirements of Rule 404(b), and its ruling will be reviewed for abuse of discretion.

The defendant first argues the trial court erred in holding a 404(b) hearing during the trial because it had previously excluded all 404(b) material during a pre-trial hearing. However, a trial court is free to revisit a pre-trial ruling on 404(b) material if the need arises. *State v. Gilley*, 173 S.W.3d 1, 6 (Tenn. 2005) (noting 404(b) criteria often "require consideration of the evidence presented at trial" and, therefore, pretrial rulings "may need to be reconsidered or revised based on the evidence presented at trial").

Although the defendant also argues the internet searches were unfairly prejudicial because they were meant to find legal adult pornography, the search terms introduced at trial, "young amateur sex" and "nude teen sex," are suggestive of someone who is interested in finding sexually explicit images of minors. *See State v. Ryan Patrick Broadrick*, No. M2017-01136-CCA-R3-CD, 2018 WL 4203883, at *1, 14 (Tenn. Crim. App. June 20, 2018) (noting the defendant's internet search history, which included the websites getmoreteens.com and nakedyounggirl.com, supported the assertion that he was seeking child pornography); *State v. Aguilar*, 437 S.W.3d 889, 896, 903 (Tenn. Crim. App. 2013) (holding the defendant's searches for "jailbait girls," "virgin porn," and "teen jailbait porn" "evinced that he knowingly sought out child pornography"). In addition, a defendant's internet history may be used to determine whether he knowingly possessed the material and whether the material depicted a minor. Tenn. Code Ann. §§ 39-17-1003(c), -1004(a)(3). Therefore, testimony of the defendant's internet search history was relevant and probative to the issue of the defendant's intent and knowledge, and the probative value of this evidence was not outweighed by the danger of unfair prejudice.

- 11 -

As such, the trial court acted within its discretion in admitting the testimony. The defendant is not entitled to relief on this issue.

## IV. Chain of Custody

The defendant next argues the trial court erred in admitting into evidence the cell phone and images contained therein without a proper showing of the chain of custody. The defendant also contends the admission of the DHS chain of custody form was erroneous. The State contends the trial court exercised proper discretion in finding the defendant's cell phone properly authenticated and in admitting the chain of custody form. We agree with the State.

## A.     Testimony

Rule 901(a) requires evidence be authenticated or identified as a condition precedent to its admissibility. Tenn. R. Evid. 901(a). "[A] witness must be able to identify the evidence or establish an unbroken chain of custody," but absolute certainty is not required. *State v. Kilpatrick*, 52 S.W.3d 81, 87 (Tenn. Crim. App. 2000) (internal citation omitted). The purpose of this requirement is to "demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence." *State v. Braden*, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993). The trial court needs only reasonable assurance of the identity and integrity of the sample in order to admit it into evidence. *Ritter v. State*, 462 S.W.2d 247, 250 (Tenn. 1970). If the facts and circumstances that surround tangible evidence reasonably establish the identity and integrity of the evidence, the trial court should admit the item into evidence. *State v. Cannon*, 254 S.W. 2d 287, 295 (Tenn. 2008). We review challenges to the chain of custody of evidence under the abuse of discretion standard. *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000).

The defendant contends the absence of Special Agent Wayne Dickey's testimony was fatal to the State's chain of custody. We disagree. In this case, the chain of custody evidence shows the following: Special Agent Hendrix met with Special Agent Cantrell and turned over the defendant's cell phone. Special Agent Cantrell brought the phone to Detective Tilley, who performed the forensic examination. After the examination was completed, Detective Tilley gave the phone and forensic report to Special Agent Cantrell, who then passed them to Special Agent Wayne Dickey. Special Agent Dickey brought the phone and report to Special Agent Hendrix, who returned them to Detective Brawner.

The State provided an unbroken chain of custody between law enforcement gaining possession of the cell phone until the forensic examination. Although Special Agent Dickey did not testify at trial, it does not prevent the phone and report from being

admissible. Evidence is not necessarily precluded from admission if the State fails to call all of the witnesses who handled it. *See State v. Johnson*, 673 S.W.2d 877, 881 (Tenn. Crim. App. 1984). Instead, Rule 901 is satisfied when the "beginning and ending 'links' of a chain of custody" are presented with no evidence of tampering in between. *State v. Terry Scott*, No. E2003-00360-CCA-R3-CD, 2003 WL 22326980, at *3 (Tenn. Crim. App. Oct. 9, 2003), *no perm. app. filed*. The testimony at trial clearly established the chain of custody from the time the cell phone came into the possession of the authorities until its forensic examination by Detective Tilley, and, therefore, the trial court did not abuse its discretion in admitting the evidence.

The defendant also notes Special Agent Cantrell expressed doubt as to the location of his meeting with Special Agent Hendrix, stating it was either Manchester or Nashville, while Special Agent Hendrix unequivocally testified he met Special Agent Cantrell in Manchester. By its finding of guilt as to the defendant's charges, the jury resolved any inconsistencies in testimony in favor of the State. The defendant is not entitled to relief on this issue.

## B.     Chain of Custody Form

The defendant also attacks the DHS chain of custody form admitted into evidence during Special Agent Hendrix's testimony. The defendant argues the form is more akin to a police report and should not have been admitted under Rule 803(6). The State contends it was properly admitted as a business record. We agree.

The Tennessee Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Generally, hearsay is inadmissible, but there are numerous exceptions to this rule, including an exception for records of regularly conducted business. Tenn. R. Evid. 802 and 803(6). A trial court's findings of fact and credibility determinations regarding hearsay are binding on this Court unless the evidence preponderates against them. *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015). However, determinations regarding whether a statement is hearsay and whether a hearsay exception applies are questions of law and subject to de novo review. *Id*.

Tennessee Rule of Evidence 803(6) provides that the following is not excluded by the hearsay rule:

> Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in

- 13 -

the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with Rule 902(11) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, profession, occupation, and calling of every kind, whether or not conducted for profit.

At trial, the State admitted into evidence a DHS chain of custody form through the testimony of Special Agent Hendrix. The form, which accompanied the defendant's cell phone at all times, included entries from each law enforcement official who handled the evidence. Special Agent Hendrix testified he created the form, it is normally created in the regular course of business, each person's entries are dated with the time and date the phone changed possession, and it is DHS policy to create the form each time a new piece of evidence is handled. The form was admitted, over the defendant's objection, as a business record.

The defendant argues the chain of custody form is more akin to a police report and, therefore, not admissible under 803(6). However, police reports are inadmissible hearsay because the information contained in them "is hearsay and is a mere opinion or conclusion not based on personal observation." *State v. Bashan Murchison*, No. E2014-01250-CCA-R3-CD, 2016 WL 659844, at *7 (Tenn. Crim. App. Feb. 12, 2016), *perm. app. denied* (Tenn. Aug. 18, 2016) (citing *McBee v. Williams*, 405 S.W.2d 668, 671 (Tenn. Ct. App. 1966)). The document in this case was made at or near the time of the event recorded, is routinely kept in the course of "business," and does not contain opinion or hearsay. The persons signing the form were under a business duty to do so. Accordingly, we conclude the DHS chain of custody form was admissible as a business record. The defendant is not entitled to relief on this issue.

## V.      Sufficiency

The defendant next contends the evidence was insufficient to support his convictions of sexual exploitation of a minor and aggravated sexual exploitation of a minor. The State contends the evidence is sufficient. We agree.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also*

Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The jury convicted the defendant of ten counts of sexual exploitation of minor over 100 images, a Class B felony, twenty-three counts of sexual exploitation of a minor, a Class D felony, and one count of aggravated sexual exploitation of a minor, a Class C felony. As charged in this case, sexual exploitation of a minor occurs when a person knowingly possesses material that includes a minor engaged in (1) sexual activity or (2) simulated sexual activity that is patently offensive. Tenn. Code Ann. § 39-17-1003(a). Aggravated sexual exploitation of a minor occurs when a person knowingly promotes, sells, distributes, transports, purchases, or exchanges material that includes a minor engaged in (1) sexual activity or (2) simulated sexual activity that is patently offensive. Tenn. Code Ann. § 39-17-1004(a). "In a prosecution under this section, the state is not required to prove the actual identity or age of the minor." Tenn. Code Ann. § 39-17-1003(e), -1004(c).

We first note, the defendant's sufficiency argument is premised on his prior argument that the cell phone was inadmissible due to an improper showing of the chain of custody. As discussed above, the chain of custody was properly established. The

remainder of the defendant's sufficiency argument consists of a single sentence in his brief, in which he simply states the evidence, including the cell phone and images contained therein, was not sufficient to support his convictions.

Viewed in the light most favorable to the State, Special Agent Gamble testified she was working undercover when she discovered the defendant had uploaded eight sexually explicit pictures of children to the Kik application. A search of the defendant's cell phone revealed over three thousand images and twenty-three videos of children in sexually explicit situations. The defendant told Special Agent Hendrix he used the Kik application to view and distribute child pornography and admitted to having child pornography on his phone. The defendant's search history indicated he was looking for pornography involving teenagers. Based on the evidence, a rational jury could find sexual exploitation of a minor and aggravated exploitation of a minor beyond a reasonable doubt. The defendant is not entitled to relief on this issue.

## VI.    Sentencing

Finally, the defendant challenges the trial court's application of enhancement factor (4), arguing his convicted offenses do not involve a victim. The State contends the trial court exercised proper discretion in determining the length of the defendant's sentences. We agree with the State.

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. §§ 40-35-114, -210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating

factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id.* § 40-35-210(e).

When an accused challenges the length and manner of service of a sentence, this Court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Here, the trial court applied enhancement factors (4) that a victim of the offense was particularly vulnerable because of age and (7) that the offense was committed to gratify the defendant's desire for pleasure or excitement. Tenn. Code Ann. § 40-35-114(4), (7). In mitigation, the trial court noted the defendant's lack of a prior criminal record. The trial court then imposed a sentence of ten years to be served at 100 percent for Counts 1-10, sexual exploitation of a minor over one hundred images, four years to be served at 30 percent for Counts 11-33, sexual exploitation of a minor, and six years to be served at 30 percent for Count 34 aggravated sexual exploitation of a minor. Specifically, Counts 1-10 were to be served concurrently with each other. Counts 11-33 were to be served concurrently with each other, but consecutive to Counts 1-10, and Count 34 would run consecutively to Counts 1-33, for an effective sentence of twenty years.

As the trial court noted, many of the children depicted in the three thousand images and twenty-three videos were young, including infants and toddlers. Therefore, the trial court did not misapply enhancement factor (4). *Aguilar*, 437 S.W.3d at 909 (upholding the use of enhancement factor (4) when the sexually explicit images found on the defendant's computer involved very young children). In addition, our review of the record indicates the trial court imposed a within applicable range sentence after properly considering the evidence adduced at trial and the sentencing hearing, the presentence report, the principles of sentencing, the parties' arguments, the nature and characteristics of the crime, the potential for rehabilitation, and the evidence of enhancing factors. Tenn.

Code Ann. §§ 40-35-103(5), -114, -210(b). Therefore, the defendant's sentence is presumed reasonable, and the defendant is not entitled to relief.

## *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE